# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 2, 2009

Charles R. Fulbruge III
Clerk

No. 08-30050

ARCTIC SLOPE REGIONAL CORPORATION; ASRC ENERGY SERVICES INC.; OMEGA NATCHIQ INC

Plaintiffs-Appellants

v.

AFFILIATED FM INSURANCE CO.

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Louisiana

Before JONES, Chief Judge, and JOLLY, Circuit Judge, and MONTALVO, District Judge.[*]

EDITH H. JONES, Chief Judge:

This appeal represents a variation on the court's previous insurance coverage decisions in *Leonard v. Nationwide Mutual Ins. Co.*, 499 F.3d 419 (5th Cir. 2007) and *Tuepker v. State Farm Fire & Casualty Co.*, 507 F.3d 346 (5th Cir. 2007). Appellants, the insured parties, admit that Hurricane Rita's storm surge in September 2005 flooded Omega Natchiq Inc.'s ("Omega") office and

---

[*] United States District Judge, Western District of Texas, sitting by designation.

1

construction yard in Iberia Parish, Louisiana, up to three feet deep. This particular flood was excluded from coverage by the "all risks" policy Arctic Slope Regional Corporation ("Arctic Slope"), the parent company, had purchased from insurer Affiliated FM Insurance Co. ("Affiliated"). Arctic Slope contends that the loss nonetheless falls within an unusual policy provision defining coverage for wind/hail damage. Like the district court, which ably dissected the policy, we disagree with Arctic Slope's position and affirm the judgment for the insurer.

After Affiliated denied coverage for the company's storm surge losses, Arctic Slope filed suit on behalf of itself and related companies. The facts underlying its insurance claim were undisputed. Arctic Slope now appeals from the district court's adverse summary judgment on coverage issues.

This court reviews the summary judgment interpreting an insurance contract *de novo*. *See Leonard*, 499 F.3d at 428. In this diversity case, we apply Louisiana's principles of construction to the policy at hand. Louisiana courts construe insurance policies like any other contract according to the parties' intent as expressed in the words of the policy. LA. CIV. CODE art. 2045-2048. An insurance policy must be "construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy." LA. REV. STAT. § 22:881. The Louisiana Supreme Court recently emphasized the importance of reasonableness in insurance policy interpretation:

> An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. . . .
>
> If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer and in favor of coverage. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. That

strict construction principle, however, is subject to exceptions. One of these exceptions is that the strict construction rule applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations. For the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable.

*Sher v. Lafayette Insurance Company*, 988 So.2d 186, 193 (La. 2008) (citations omitted).

Arctic Slope contends that Omega's storm surge damage was expressly covered by the wind/hail provision of the Affiliated policy or alternatively that the policy is ambiguous and must be construed in its favor. A systematic review of the applicable policy provisions is therefore necessary.

The Affiliated policy covers facilities owned by Arctic Slope and its subsidiaries throughout the United States for "all risks of direct physical loss or damage to insured property except as defined and limited herein." The policy goes on to cover losses from both "flood" and "wind and hail," subject to specific sub-limits, restrictions and exclusions.

Notably, Arctic Slope concedes that while the policy definition of "flood"[1] encompasses storm surge damage, the policy excludes flood coverage, at a minimum, in low-lying flood-prone areas like Omega's location.[2] Apart from the

---

[1] **Flood** means any surface water; tidal or seismic sea wave; rising (including overflowing or breaking of boundaries) of any body of water; including but not limited to reservoirs, lakes, streams, rivers, ponds and harbors all whether driven by wind or not, and including spray from any of the foregoing that results from, contributes to, or is aggravated by any of the above. **Flood** also includes physical loss or damage from water which backs up through sewers or drains that are below ground level as a result of **flood**.

[2] **1. Flood Exclusion**

Coverage as provided by Section C., Additional Coverage, Item 2. Flood: is excluded at any location situated in:

1. Any flood zone or area designated by the Federal Emergency Management Agency (FEMA) as subject to a flood frequency up to and

defined time period and locations in which flood damage is covered, the policy specifically excludes loss or damage caused by "**[f]lood**, [s]eepage or [i]nflux of water from natural underground sources below the surface of the ground . . ." *See* Group I Exclusions.

Wind/hail coverage is afforded by Form S2 accompanying the policy, a list of Wind and Hail Prone Areas that includes Iberia Parish, Louisiana, among counties of nine states, Puerto Rico and the Virgin Islands. Reimbursement for wind/hail damage is subject to a special sub-limit and deductible. The policy definition of "wind and/or hail" is rather broad:

> **Wind and/or hail** means direct and/or indirect action of wind and/or hail and all loss or damage resulting therefrom whether caused by wind, by hail or by any other peril other than fire or explosion including but not limited to, loss or damage caused when water, in any state, rain, sleet, snow, sand, dust or any other substance, material, object or thing is carried, blown, driven, or otherwise transported by wind onto or into said location.

One more critical policy feature is relevant. Prefacing the Group I Exclusions (including the flood exclusion noted above) is the following anti-

---

including the 100 year frequency, or

2.    Any flood zone or area for which FEMA has not yet determined the flood hazard frequency or has not yet classified or designated as being in or out of a flood zone, or any area outside the United States.

The peril of flood is covered in an area protected by dams, levees, dikes, or walls which:

a.    Protect such areas from at least the level of the 100 year flood, and have no such openings or flood gates, and

b.    Were built by and are either maintained or inspected by the United States (U.S.) Army Corps of Engineers.

Affiliated FM will not undertake any duty to advise the insured on whether any locations are in an area excluded from coverage under the Flood Endorsement. The Insured has the responsibility to determine whether its locations are in an excluded area.

concurrent cause ("ACC") clause, tailored as a Louisiana mandatory endorsement:

> Group I. This policy does not insure against loss or damage caused directly or indirectly or resulting from any of the following. Loss or damage is excluded regardless of any other cause or event whether or not insured under this policy that contributes concurrently or in any sequence to the loss or damage.

Arctic Slope maintains that Omega's damage falls squarely within the plain language of the wind/hail provision because the storm surge consisted of water driven by wind onto or into Omega's property. *See Leonard*, 499 F.3d at 437, n.15 (defining a storm surge as "water that is pushed toward the shore by the force of the winds swirling around the storm. This advancing surge combines with the normal tides to create the hurricane storm tide . . . This rise in water level can cause severe flooding in coastal areas."). Based on this premise, the company posits two levels of ambiguity in the policy. First, the policy is allegedly ambiguous because it excludes coverage for the storm surge damage within the flood definition while authorizing coverage for the same damage in the wind/hail provision. The district court rejected Arctic Slope's proffered interpretation of the wind/hail provision as unreasonable in light of the entire policy. We need not opine on that conclusion, however, because even if a hurricane storm surge falls within the definitions of both an excluded peril (flood at Omega's site) and a covered peril (wind/hail), the policy is not ambiguous. The policy explicitly states that it covers all risks of direct physical loss or damage "except as excluded under this policy." Section A, Perils Insured. There is no ambiguity when the policy is read as a whole. The exclusion of storm surge as a flood event cannot be reversed by its possible inclusion as a wind/hail event.

Second, Arctic Slope considers the ACC clause ambiguous because there is only one cause of damage–storm surge–not separate causes defined as separate perils in the policy; and because the flood exclusion is awkwardly

5

articulated within that clause.[3] Neither of these arguments withstands analysis. Notwithstanding Arctic Slope's creative efforts to manufacture ambiguity, the ACC clause is unequivocal and unyielding. It excludes insurance against loss or damage caused by or resulting from any of the listed causes, including flood (as defined by the policy). It then repeats that loss or damage is excluded "regardless of any other cause or event whether or not insured under this policy that contributes concurrently or in any sequence to the loss or damage." The storm surge flood occasioned by Hurricane Rita "whether driven by wind or not" is not covered by this policy. Consequently, the ACC clause precludes coverage of the loss or damage under the wind/hail provision as water "carried, blown, driven or otherwise transported by wind onto or into said location."[4] In this situation, the ACC clause operates exactly as it was intended, and it is not ambiguous. The clause eliminates application of an efficient proximate cause rule, whereby a jury could be called upon to determine the relative contribution of the covered and the excluded perils, by excluding coverage altogether.

The interpretation of the ACC in Affiliated's policy is therefore essentially similar to our interpretation of an ACC clause in *Leonard*. This court concluded that the policy's plain language left "no interpretive leeway to conclude that recovery can be obtained for wind damage that occurred concurrently or in sequence with the excluded water damage." *Leonard*, 499 F.3d at 430 (internal quotation omitted). *Leonard* further explained that damage caused by wind

---

[3] Restating in full the flood exclusion within Group I of Excluded Perils, the provision states:

> 8. **Flood**, Seepage or Influx of Water from Natural Underground Sources below the surface of the ground. Except as provided in Section C., Additional Coverage, Item 2. Flood. . . .

[4] Unlike in *Leonard*, the damage here was all allegedly caused by storm surge. Arctic Slope did not assert damages attributable separately and independently either to wind or flooding.

"concurrently or in any sequence" with water is exemplified by "the storm-surge flooding that follows on the heels of a hurricane's landfall." *Id.* Hence, "if wind and water synergistically caused the *same* damage, such damage is excluded." *Id.* (emphasis in original). The fact that the wind/hail provision in this case is written more broadly than the wind-only provision in *Leonard* does not, in our view, render the ACC clause ambiguous.

We also reject Arctic Slope's contention that the description of a flood peril excluded by the ACC clause is itself ambiguous. It is simply a microcosm of the general scope of policy coverage, that is, certain perils are covered as defined and limited in the policy and subject to the policy's express exclusions. Hence, flood loss, as supplementally defined to include seepage or influx of water from below ground, remains excluded under the ACC clause, although it is covered, subject to other qualifications, as defined by Part C, Additional Coverage, Section 2. There is no ambiguity; instead, coverage has been carefully apportioned under the policy to certain flood losses.

## CONCLUSION

For the foregoing reasons, Omega's loss from Hurricane Rita's storm surge is not covered by Affiliated's policy, either as a matter of express policy interpretation or by inference drawn from ambiguity. The judgment of the district court is **AFFIRMED**.