# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 10, 2009

Charles R. Fulbruge III
Clerk

No. 08-31206

BAYOU STEEL CORPORATION; NEW YORK MARINE & GENERAL
INSURANCE COMPANY

Plaintiffs-Appellants

v.

EVANSTON INSURANCE COMPANY; NATIONAL UNION FIRE
INSURANCE COMPANY OF PITTSBURGH, PA.

Defendants-Appellees

Appeal from the United States District Court
For the Eastern District of Louisiana.
No. 2:07-cv-1034

Before KING, DAVIS, and  BENAVIDES, Circuit Judges.

PER CURIAM:[*]

In this case we consider the meaning and scope of an endorsement to an insurance policy excluding coverage for claims or suits against an insured brought "pursuant to" the Longshoremen and Harbor Worker's Compensation Act ("LHWCA").  More particularly, we consider whether the exclusion of

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

coverage for claims brought pursuant to the LHWCA applies to a third party maritime tort suit brought against the insured by an injured worker covered by the LHWCA. We conclude that the exclusion does not apply and reverse the order of the district court, reaching a contrary conclusion.

I.

In 2002, Bayou Steel Corporation ("Bayou") engaged Memco Barge Lines under a classic contract of affreightment to transport steel bundles by barge from Bayou's facility in La Place, Louisiana to Bayou's facility on the Calumet River in Illinois. Bayou loaded the barge in Louisiana and hired Kindra Marine Terminal, Inc., a stevedoring company, to unload the barge upon arrival in Illinois. While unloading the barge, Ryan Campbell, a Kindra employee, suffered substantial injuries. As a result, Campbell filed suit against Bayou in Illinois state court. Bayou's primary wharfinger insurer accepted coverage and defense for Campbell's claims against Bayou. However New York Marine & General Insurance Company ("NYMAGIC"), Bayou's excess wharfinger insurer, Evanston Insurance Company ("Evanston"), Bayou's primary general liability insurer, and National Union Fire Insurance Company of Pittsburgh ("NUFICPA"), Bayou's excess insurer, all initially denied coverage.

Faced with Campbell's claim for damages, Bayou brought suit against all of its insurers who had denied coverage of Campbell's claim. On March 23, 2007, NYMAGIC agreed to fund a substantial portion of the settlement between Campbell and Bayou in exchange for Bayou's dismissal of all of its claims against NYMAGIC. NYMAGIC also took an assignment from Bayou of its claims against the remaining insurers who continued to deny coverage. Following Bayou and NYMAGIC's agreement, the parties were realigned and NYMAGIC joined Bayou as plaintiff against defendant appellees. In October of

2008, the parties filed opposing Motions for Summary Judgment and presented the coverage issues to the district court

Evanston's[1] denial of coverage was based on a exclusions from its policy. which stated:

> This insurance does not apply to "Bodily Injury", "Property Damage", "Personal Injury", or "Advertising Injury", imposed upon you or assumed by you under contract with respect to claims made or suits brought against you or any indemnitee pursuant to the "United States Longshoremen & Harbor Workers Compensation Act" (Title 33 USCA, Sections 901 - 950) including any amendments or revisions thereto.

Record, pp. 149-155. Before the district court, Evanston contended that because of both Campbell's status as a longshoreman and the nature of the claims he asserted against Bayou, Campbell's claim or suit could only have been brought pursuant to section 905(b) or section 933 of the LHWCA. Accordingly, Evanston argued, Campbell's claims were "pursuant to" the LHWCA. Bayou, however, maintained that Campbell's assertion against Bayou was not a claim or suit brought "pursuant to" the LHWCA but was a claim grounded in negligence under the general maritime law.

The district court granted Evanston's Motion for Summary Judgment, holding that Campbell's claims against Bayou were pursuant to the LHWCA and thus Evanston's policy provided no coverage to Bayou.

Bayou appealed.

## II.

This court reviews a district court's grant of summary judgment *de novo*, applying the same standards as the district court. *Kimberly-Clark Corp. v. Factory Mut. Ins. Co.*, 566 F.3d 541 (5th Cir. 2009). A party is entitled to

---

[1] As an excess insurer, NUFICPA's policy followed the form of the Bayou's primary policies. As such, coverage under Evanston's policy necessarily implies coverage under NUFICPA's policy.

summary judgment only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.

## III.

Bayou argues first that Evanston's policy exclusion for suits brought "pursuant to" the Longshoremen & Harbor Worker's Compensation Act, 33 U.S.C. § 901 *et seq* does not exclude coverage for negligence claims brought by longshoremen against third parties under 33 U.S.C. § 933.

In finding that the exclusion did apply in this case, the district court relied on our decision in the coverage case of *Beaumont Rice Mill, Inc. v. Mid-American Indemnity Insurance Co.*, 948 F.2d 950 (5th Cir. 1992). In *Beaumont*, Mid-American Indemnity Insurance Company (MAIIC) issued an excess CGL policy to Beaumont Rice Mill. As in this case, the plaintiff in the underlying suit was a longshoreman not employed by Beaumont who was injured when a sack of rice fell on him. The longshoreman brought an action against Beaumont in negligence and Beaumont asserted a third party demand against MAIIC for coverage. MAICC, however, refused coverage based on an exclusion in its policy with Beaumont. The exclusion stated that MAICC will not insure, "any losses arising out of **injuries covered under** the United States Longshore and Harbor Workers Act, Federal Employees Liability Act, Maritime or Admiralty Law whether brought by the injured employee or any third party." *Id* at 951 (emphasis added).

Although the facts in *Beaumont* are similar to those in this case, the exclusion at issue in *Beaumont* is very different from the exclusion in Evanston's policy. Evanston's policy excludes coverage for "**claims** made or **suits** brought against [Bayou] **pursuant to** the LHWCA" while MAICC's exclusion denied coverage for "any losses arising out of **injuries covered** under the LHWCA."

(emphasis added). In *Beaumont*, the injured longshoreman's injuries were covered under the LHWCA. Indeed, he was receiving LHWCA benefits from his employer after the accident. Under the plain language of the exclusion in *Beaumont*, then, the court had no occasion to consider the nature of the injured longshoreman's claim against Beaumont. The fact that his injuries were covered under the LHWCA triggered the exclusion. But in this case, we must look to the nature of Campbell's claims against Bayou rather than looking at whether his injuries were covered under the LHWCA. The exclusion contained in *Beaumont* is therefore distinguishable from the exclusion we must interpret in Evanston's policy.

An insurance policy is a contract subject to the general rules of contract interpretation set forth in the Louisiana Civil Code. *Succession of Fannaly v. Lafayette Ins. Co.*, 805 So.2d 1134, 1137 (La. 2002). In the interpretation of an insurance policy, our responsibility is to determine the common intent of the parties. La. Civ. Code art. 2045. To ascertain this common intent, courts begin their analysis with a review of the words in the insurance contract. *Succession of Fannaly v. Lafayette Ins. Co.*, 805 So.2d 1134, 1137 (La. 2002) *citing* La. Civ. Code art. 2047. Accordingly, the proper inquiry in determining whether Evanston's policy excludes coverage for the damages paid to Mr. Campbell must commence with the plain language of the exclusion.

The exclusion in this case bars "claims made or suits brought" against Bayou "pursuant to" the LHWCA. The LHWCA acknowledges three types of claims available to a covered longshoreman: a claim for compensation against a covered employer under § 904, a tort claim against a "vessel" under § 905(b), and a tort claim against third parties under § 933. In the proceedings below, Evanston acknowledged that Bayou was not Campbell's employer and Campbell asserted no claims for compensation against Bayou under § 904 of the LHWCA. Record, p.861. At oral argument, counsel for appellees conceded that Campbell,

in his lawsuit against Bayou, did not assert a claim for vessel negligence under § 905(b). Therefore, the issue narrows to whether Campbell's claim or suit against Bayou for third party negligence–a claim recognized in § 933–is a claim brought "pursuant to" the LHWCA.

The primary purpose behind the creation of the LHWCA was to provide a compensation scheme for longshoremen and other land based workers working on or near vessels who, because of the maritime character of their employment, were not covered under state worker's compensation statutes. Admiralty and Maritime Law, Thomas J. Schoenbaum 7-1. Before the passage of the LHWCA, maritime workers could assert a general maritime law claim against any party–their employers and third parties– so long as their claims properly satisfied the requirements of admiralty jurisdiction.[2]

In § 904, the LHWCA makes it clear that the compensation remedy is the longshoreman's exclusive remedy against his employer; yet the Act also makes it clear that the longshoremen's historic general maritime law claim against third parties is unaffected by § 904. 33 U.S.C. § 933(a) reads:

> If on account of a disability or death for which compensation is payable under this Act, the person entitled to such compensation determines that some person other than the employer or a person or persons in his employ is liable in damages, **he need not elect**

---

[2] G. Gilmore & C. Black, *The Law of Admiralty* , §6–4, p.278 (1975) ("If the circumstances of his injury constituted a maritime tort, the harbor worker, like any other person injured by or on board a ship, could bring an action *in personam* against the shipowner or *in rem* against the ship, or, under the saving to suitors clause, could proceed outside admiralty." ) *See e.g. Southern Pac. Co v. Jensen* , 244 U.S. 205, 217 (1917) (decided before the passage of the LHWCA and holding that the deceased stevedore's claim against his employer arose under admiralty jurisdiction: "The work of a stevedore, in which the deceased was engaging, is maritime in its nature; his employment was a maritime contract; the injuries which he received were likewise maritime; and the rights and liabilities of the parties in connection therewith were matters clearly within admiralty jurisdiction); *See also Atlantic Transport Co. v. Imbrovek*, 234 U.S. 52, 62 (1914) where a stevedore brought claims for slander against his employer and a third party: ("The appropriate basis of all admiralty jurisdiction, whether in contract or tort, is the maritime nature of the transaction or event . . .").

**whether to receive such compensation or to recover damages against such third person.**

(emphasis added).[3] In *Norfolk Shipbuilding & Drydock Corp. v. Garris*, the United States Supreme Court, in discussing the nature of the longshoreman's claim against third parties, held that 33 U.S.C. § 933(a) "expressly *preserves* all claims against third parties." 532 U.S. 811, 818 (2001) (citations omitted) (emphasis added). This court has also recognized that a person entitled to compensation under the LHWCA can still pursue a negligence claim against a third party and that this claim is not created by 33 U.S.C. § 933(a). *McLaurin v. Noble Drilling Inc.*, 529 F. 3d 285, 292 (5th Cir. 2008) (citations omitted). In light of the plain language of the statute and the holdings of these cases, we therefore read § 933 as having one purpose: to make it clear that the longshoreman's historic maritime tort action against third parties was unaffected by the provisions of the LHWCA   Accordingly, Campbell's claim or suit against Bayou is unaffected by  § 933 of the LHWCA and thus cannot be characterized as a claim or suit "pursuant to" the LHWCA    Evanston's exclusion, therefore, does not apply  and Evanston and NUFICPA must provide coverage to Bayou consistent with their respective policies.

## IV.

Appellee NUFICPA argues that should this court find Evanston's exclusion inapplicable to this case, NYMAGIC's subrogation claim fails as a matter of law. Specifically, appellees maintain that since NYMAGIC's payment of Campbell's claims was purely voluntary, NYMAGIC is not subrogated to

---

[3] *See also Perez v. Arva Nat'l Shipping Line, Ltd.*, 468 F.Supp. 799, 802 (S.D.N.Y. 1979), *aff'd mem.*, 622 F.2d 575 (2d Cir. 1980), *aff'd sub nom. Rodriguez v.  Compass Shipping Co.*, 451 U.S. 596 (1981)"[§ 933] is intended to provide covered employees the benefits of workmen's compensation, without depriving them of the right to be compensated for their injuries by negligent third parties, or eliminating the incentive for third parties to provide longshoremen a safe place to work..

Bayou's rights and the assignment Bayou executed in NYMAGIC's favor is ineffective. We disagree.

When NYMAGIC funded a substantial portion of the settlement between Bayou and Campbell, they received an assignment from Bayou.[4] Since the Release and Assignment Agreement between NYMAGIC and Bayou makes clear that the parties consented to be governed by Louisiana law, NYMAGIC has acquired these rights under the law of conventional subrogation and assignment of rights.[5] Record, p. 802.

Subrogation is "the substitution of one person to the rights of another."[6] The Louisiana Civil Code allows great contractual freedom in the assignment of rights, stating that all rights–save for strictly personal rights–may be assigned. La. Civ. Code art. 2642.[7] Thus, regardless of whether NYMAGIC is subrogated

---

[4] The relevant language states that NYMAGIC received from Bayou: "The assignment, transfer, and conveyance of "any and all rights, movable or immovable, tangible or intangible, that [Bayou] possessed as plaintiff in the litigation to pursue indemnification from the remaining general liability and excess umbrella insurers for payment up to the actual amount paid by NYMAGIC on behalf of Bayou Steel." Record, p. 801.

[5] As the Civil Code points out, there is no distinction between assignment of rights and conventional subrogation by the obligee. La. Civ. Code art 1827. cmt. (a). The Civil Code defines conventional subrogation by the obligee in art. 1827: "An obligee who receives performance from a third person may subrogate that person to the rights of the obligee, even without the obligor's consent. That subrogation is subject to the rules governing obligation of rights."

[6] Subrogation can be conventional or legal. In conventional subrogation by the obligee, an obligee who receives performance from a third person may subrogate that person to the rights of the obligee, even without the obligor's consent.

[7] Bayou's rights and causes of action it has against its insurers who refused coverage are not strictly personal. The Civil Code distinguishes between strictly personal and heritable obligations. Strictly personal obligations are "patrimonial in nature [but] are so closely connected with the personality of the debtor that they cannot be exercised by third persons. A.N. Yiannopoulos, *Louisiana Civil Law Treatise* § 197 (4th ed. 2001). Examples of strictly personal obligations are obligations to fulfill a marriage engagement, contracts for dancing lessons, and recording contracts between a musician and a record company. La. Civ. Code art. 1766 cmt. (c). *See King v. Illinois Nat. Ins. Co.*, 9 So.3d 780, 791 (La. 2009) (Kimball, J. dissenting) ("The obligation of an insurer to pay damages to its insured for breach of its duties

to Bayou's rights as a matter of law, the assignment Bayou executed in NYMAGIC's favor effectively transferred Bayou's rights against Evanston and others to NYMAGIC. Accordingly, NYMAGIC's claims against appellees are proper.

V.

For the reasons stated above, we reverse the judgment of the district court and remand this case for further proceedings if necessary and for entry of judgment consistent with this opinion.

REVERSED AND REMANDED.

---

is not uniquely personal to the insurer or the insured.").