# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 31, 2011

No. 10-30678

Lyle W. Cayce
Clerk

Bayou Steel Corporation; New York Marine & General Insurance Company,

Plaintiffs-Appellees

v.

National Union Fire Insurance Company of Pittsburgh, Pennsylvania,

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana

Before SMITH, WIENER, and OWEN, Circuit Judges.

WIENER, Circuit Judge:

This case is before us for a second time.[1] At this juncture, it is a contest between two insurance companies: Plaintiff-Appellee New York Marine & General Insurance Company ("NYMAGIC") and Defendant-Appellant National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("NUFIC-PA"). Both were insuring Plaintiff-Appellee Bayou Steel Corporation ("Bayou") when Ryan Campbell, an employee of Bayou's Illinois stevedoring contractor, Kindra Marine Terminal ("Kindra"), was injured during Kindra's unloading of Bayou's steel

---

[1] *See Bayou Steel Corp. v. Evanston Ins. Co.* ("*Bayou I*"), 354 F. App'x 9 (5th Cir. 2009).

No. 10-30678

bundles ("the cargo") from a vessel belonging to Memco Barge Lines ("Memco"). Memco had contracted with Bayou to haul the cargo for Bayou by barge from Louisiana to Illinois. The ultimate issue to be determined in this appeal ("*Bayou II*") is whether Campbell's employer, Kindra, was Bayou's *contractor* or its *sub-contractor* for purposes of the provision in NYMAGIC's policy that excludes coverage of Bayou's liability for bodily injury incurred by "[e]mployees of . . . [Bayou's] sub-contractors" but does not exclude coverage of such injuries incurred by employees of Bayou's contractors.

Following an extensive analysis of the meaning of "sub-contractor" in Louisiana law, the district court impliedly ruled that Kindra was Bayou's sub-contractor when it granted Bayou and NYMAGIC's motion for summary judgment excluding coverage under NYMAGIC's policy. For the reasons explained below, we disagree with that conclusion and hold that, for purposes of the sub-contractor exclusion in the NYMAGIC policy, Kindra was Bayou's contractor — not its *sub*-contractor — so that Campbell's injuries are not excluded from coverage under NYMAGIC's policy. We therefore reverse the district court's summary judgment and remand this case to that court for further proceedings consistent herewith.

## I. FACTS & PROCEEDINGS

### A. *Facts*

Bayou entered into a contract of affreightment calling for Memco to transport the cargo from Louisiana to Illinois on one of Memco's barges.[2] Under that contract, Bayou agreed to pay Memco for transporting the cargo; in return,

---

[2]   We have defined "contracts of affreightment" as "agreements under which the commodities [a]re to be hauled." *Winn v. Comm'r of Internal Revenue*, 595 F.2d 1060, 1062 (5th Cir. 1979). *See also Bank One, La. N.A. v. MR. DEAN MV*, 293 F.3d 830, 835 (5th Cir. 2002) (explaining that the paying party to an affreightment contract pays only "for the safe transport of a specific cargo to a specific destination" such that the contract begins performance and "ceases to be executory only when the cargo is loaded" (internal quotation marks and citation omitted)).

No. 10-30678

Memco agreed to transport the cargo from Louisiana to Illinois on one of its barges. Memco's performance obligation did not include loading or unloading the cargo onto and off of its barge; its obligation was expressly limited to transporting the cargo by water from the loading point in Louisiana to the unloading point in Illinois. Bayou expressly retained responsibility for loading its cargo onto Memco's barge in Louisiana and offloading its cargo from Memco's barge after it arrived in Illinois.

The cargo was loaded onto Memco's barge in Louisiana without incident. Instead of unloading the cargo in Illinois itself, however, Bayou entered into an entirely separate contract with Kindra, a stevedoring company, for Kindra to offload Bayou's cargo in Illinois. It was during the course of Kindra's unloading of the cargo from Memco's barge that Kindra's employee, Campbell, was seriously injured.

*B. Proceedings*

Campbell sued Bayou in Illinois state court. The parties later settled for six million dollars, four million of which was paid either by or on behalf of Bayou. National Union Fire Insurance Co. of Louisiana ("NUFIC-LA"),[3] Bayou's primary wharfinger insurer, accepted responsibility for a portion of the coverage and for the defense of Bayou in Campbell's suit. By contrast, coverage was initially denied by (1) Bayou's excess wharfinger insurer, NYMAGIC; (2) Bayou's primary general-liability insurer, Evanston Insurance Co. ("Evanston"); and (3) Bayou's excess general-liability insurer, NUFIC-PA. Bayou sued those three coverage-denying insurers in district court.

After Bayou sued those insurance carriers, NYMAGIC agreed to fund a substantial portion of the settlement between Campbell and Bayou. NYMAGIC conditioned its agreement on Bayou's dismissing all of its claims against

---

[3] Not to be confused with NUFIC-PA, the Defendant-Appellant in this case.

No. 10-30678

NYMAGIC and assigning its claims against its other insurers to NYMAGIC. After Bayou agreed to those conditions, the parties were realigned, with NYMAGIC joining Bayou as a plaintiff (NYMAGIC and Bayou are currently the Plaintiffs-Appellees herein).

In *Bayou I*, we disposed of issues relating to coverage under Evanston's primary general liability policy.[4] On remand, Bayou and NYMAGIC filed a motion for summary judgment, contending that NYMAGIC's excess wharfinger policy did not provide coverage for Campbell's injuries, thereby implicating NUFIC-PA's excess general-liability policy. The district court granted summary judgment in favor of Bayou and NYMAGIC, concluding that Campbell's injuries were excluded from coverage under NYMAGIC's policy. NUFIC-PA timely filed a notice of appeal.

## II. STANDARD OF REVIEW

We review a district court's summary judgment de novo.[5] We also review issues of contract interpretation de novo.[6] In doing so, we afford no deference to the district court's determinations of issues of law of the state in which that court's chambers are located.[7] Summary judgment is frequently an appropriate

---

[4] *Id.* at 14-15.

[5] *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010) (citing *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 259-60 (5th Cir. 2003)).

[6] *Texaco Exploration & Prod., Inc. v. AmClyde Engineered Prods. Co.*, 448 F.3d 760, 777 (5th Cir. 2006) (citing *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001); *Nolan v. Golden Rule Ins. Co.*, 171 F.3d 990, 992 (5th Cir. 1999)).

[7] *See Salve Regina Coll. v. Russell*, 499 U.S. 225, 239-40 (1991) ("The obligation of responsible appellate review and the principles of a cooperative judicial federalism underlying *Erie* require that courts of appeals review the state-law determinations of district courts *de novo*. The Court of Appeals in this case therefore erred in deferring to the local expertise of the District Court." (emphasis in original)).

No. 10-30678

vehicle for resolving questions of contract interpretation.[8]

### III. ANALYSIS

NYMAGIC's excess wharfinger policy was written as a "following form" to Bayou's primary wharfinger policy issued by NUFIC-LA. A "following form" excess policy incorporates by reference all terms and conditions of the primary insurance policy.[9] The NYMAGIC excess policy's exclusion at the core of this dispute, as thus incorporated from NUFIC-LA's primary policy, states:

> In consideration of an additional premium . . . this policy is extended to cover the liability imposed by law for loss of life, or personal injury arising out of the custodianship of the barges described . . . hereunder but always excluding liability for:
>
> . . .
> (2) Employees of . . . [Bayou's] sub-contractors.

This appeal turns on whether Campbell's employer, Kindra, was a *sub-contractor* of Bayou for purposes of this NYMAGIC policy exclusion. There are two possible alternatives: (1) Kindra was a sub-contractor of Bayou, so NYMAGIC is off the hook for coverage of Campbell's injuries, and NUFIC-PA is on the hook; or (2) Kindra was *not* a sub-contractor of Bayou, so NYMAGIC is on the hook, and NUFIC-PA is off.

As Louisiana law controls in this diversity case,[10] we apply that state's substantive law, including its principles of contract construction and its classification of contracting parties, e.g., contractors and sub-contractors.[11] In construing insurance policies, Louisiana courts apply its general rules of

---

[8] *See Amoco Prod. Co. v. Tex. Meridian Res. Exploration Inc.*, 180 F.3d 664, 668-69 (5th Cir. 1999).

[9] *See Toston v. Nat'l Union Fire Ins. Co. of La.*, 942 So. 2d 1204, 1207 (La. Ct. App. 2006).

[10] *See Bayou I*, 354 F. App'x at 12 (applying Louisiana law).

[11] *See Arctic Slope Reg'l Corp. v. Affiliated FM Ins. Co.*, 564 F.3d 707, 709 (5th Cir. 2009).

5

contract interpretation, beginning with the applicable articles of the Louisiana Civil Code.[12] The interpreting court construes the words and phrases of the agreement according to their plain, ordinary, and generally prevailing meanings, unless they have acquired some technical meaning.[13] Only if the words of a contract are not clear and explicit or lead to absurd consequences,[14] may the interpreting court seek to determine the common intent of contracting parties.[15] Furthermore, "[e]xclusionary provisions in insurance contracts are strictly construed against the insurer."[16]

As noted by the district court, NYMAGIC's policy does not expressly define "sub-contractor." An undefined term is not necessarily ambiguous, however; such a term is to be given its "generally prevailing meaning."[17] The district court defined sub-contractor after examining that word's generally prevailing meaning, including in Louisiana's applicable statutes, various dictionaries, and

---

[12] *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003) (citing *Carbon v. Allstate Ins. Co.*, 719 So. 2d 437, 439 (La. 1998); *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 763 (La. 1994)); *Succession of Fannaly v. Lafayette Ins. Co.*, 805 So. 2d 1134, 1137 (La. 2002) (citing LA. CIV. CODE ANN. arts. 1912, 1914-15).

[13] LA. CIV. CODE ANN. art. 2047; *Fannaly*, 805 So. 2d at 1137 (citations omitted). We have not found any technical meanings for "contractor" or "sub-contractor" in statutes or opinions addressing transportation by water, and the parties have not referred us to any.

[14] LA. CIV. CODE ANN. art. 2046. *See also Hebert v. Webre*, 982 So. 2d 770, 773-74 (La. 2008) ("If the words of the policy are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and the agreement must be enforced as written." (citations omitted)).

[15] LA. CIV. CODE ANN. art. 2045; *Cadwallader*, 848 So. 2d at 580 (citations omitted).

[16] *Calogero v. Safeway Ins. Co. of La.*, 753 So. 2d 170, 173 (La. 2000) (citing *Garcia v. St. Bernard Parish Sch. Bd.*, 576 So. 2d 975, 976 (La. 1991)). *Accord Cochran v. B.J. Servs. Co. USA*, 302 F.3d 499, 502 (5th Cir. 2002) ("[I]t is well-settled Louisiana law that *all* insurance contract exclusion provisions are construed 'strictly . . . against the insurer, and any ambiguity is construed in favor of the insured.'" (quoting *Merlin B. Smith, Inc. v. Travelers Prop. Cas.*, 811 So. 2d 1097, 1100 (La. Ct. App. 2002) (emphasis in original)).

[17] LA. CIV. CODE ANN. art. 2047; *Henry v. S. La. Sugars Coop., Inc.*, 957 So. 2d 1275, 1277 (La. 2007) (citations omitted).

No. 10-30678

two of our opinions. The district court succinctly summarized those definitions as "a subcontractor is simply some person hired to do part of another person's work." The court apparently concluded that Kindra met that definition because it held that Campbell's injuries were excluded from coverage under NYMAGIC's policy.

We agree with that definition as far as it goes, but here it begs the question, "*which* other person's work?" To hold that Campbell's injuries were excluded from coverage under the policy, the court had to have found that his employer, Kindra, was a sub-contractor of Bayou, "hired to do part of" Bayou's "work." Despite our respect for the district court, we must disagree with it in this instance. Our non-deferential de novo review[18] convinces us that Kindra was Bayou's contractor, not its sub-contractor.

We begin our analysis with a review of the definitions of "sub-contractor" that the district court considered:

- One who is awarded a portion of *an existing contract* by a contractor.[19]

- [O]ne who *takes portion of a contract* from principal contractor or another subcontractor . . . . [or] one who takes from the principal or prime contractor a specific part of the work undertaken by the principal contractor.[20]

- [One] who has entered into a contract, express or implied, for the performance of an act with the person *who has already contracted* for its performance.[21]

---

[18] *See Salve Regina*, 499 U.S. at 239-40.

[19] BLACK'S LAW DICTIONARY 1464 (8th ed. 2004) (emphasis added).

[20] BLACK'S LAW DICTIONARY 1424 (6th ed. 1990) (emphasis added).

[21] BLACK'S LAW DICTIONARY 1593 (4th ed. 1951) (emphasis added).

No. 10-30678

- [A]n individual or business firm contracting to perform part or all of *another's contract*.[22]

- [A] person or company that assumes by *secondary contract* some or all of the obligations of the original contractor.[23]

- A subcontractor is one who, by contract made directly with a contractor, or by a contract that is one of a series of contracts emanating from a contractor, is bound to perform all or part of a work *contracted for by the contractor*.[24]

- A subcontractor is one who takes *a portion of a contract* from the principal contractor or another subcontractor.[25]

- By definition, a subcontractor enters into *an agreement with a contractor*, rather than the principal party whose performance is payment in exchange for the provision of goods or services or the completion of a project.[26]

An in-depth analysis of the foregoing definitions makes it pellucid that an indispensable prerequisite to sub-contractor status is the pre-existence of a primary contract, i.e., an agreement between a principal party (the paying party) and a prime contractor (the performance party). The most recent edition of Black's Law Dictionary highlights the requirement of a pre-existing contract between two primary parties in even stronger terms than in some previous editions, defining "sub-contractor" as "[o]ne who is awarded a portion of an

---

[22] WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 1173 (9th ed. 1990) (emphasis added).

[23] WEBSTER'S NEW WORLD DICTIONARY 1333 (3d ed. 1998) (emphasis added).

[24] LA. REV. STAT. ANN. § 9:4807(C) (emphasis added).

[25] *Avondale Indus., Inc. v. Int'l Marine Carriers, Inc.*, 15 F.3d 489, 494 (5th Cir. 1994) (citing *Hardware Mut. Cas. Co. v. Hilderbrandt*, 119 F.2d 291, 297 (10th Cir. 1941)) (emphasis added).

[26] *Texaco*, 448 F.3d at 778 (citing BLACK'S LAW DICTIONARY 1464 (8th ed.)) (emphasis added).

No. 10-30678

*existing contract* by a contractor, esp. a general contractor."[27] Under this definition, only the contractor — the performance party in the pre-existing contract — can create the position of sub-contractor of the principal or paying party.

Within the set of all bilateral, or synallagmatic, contracts in Louisiana[28] is a substantial subset, *viz.*, those in which one party — the paying party — agrees to pay the other party — the performance party — for doing the specified work for a specified price. The affreightment agreement between Bayou and Memco was just such a contract: Memco's promise was to transport Bayou's property by barge from point A to point B for an agreed price, and Bayou's promise was to pay Memco the agreed price for doing so. The fact that the performance promised to Bayou by Memco expressly excluded any loading or unloading of Bayou's cargo by Memco is key to our determination whether Kindra was Bayou's contractor or its sub-contractor.

Later, in an entirely *separate* payment/performance contract, the performance party (Kindra) promised only a performance, *viz.*, to offload the cargo of the paying party (Bayou) from the barge at point B for an agreed price — a stereotypical stevedoring performance — and the paying party (Bayou) promised only to pay the agreed price to the performance party (Kindra) for doing so. Thus, in each independent contract, Bayou's only obligation was to *pay* for a performance, and the only obligation of the performance party — Memco in one contract and Kindra in the other — was to do "work," *viz.,* for Memco, the transporting of Bayou's cargo from Louisiana to Illinois by barge; for Kindra, the unloading of Bayou's cargo from that barge in Illinois.

---

[27] BLACK'S LAW DICTIONARY 1560 (9th ed. 2009) (emphasis added).

[28] *See* LA. CIV. CODE ANN. art. 1908.

9

No. 10-30678

These entirely separate contracts were too attenuated to produce a sub-contractor relationship between Bayou and Kindra (or for that matter, between Bayou and Memco). Bayou was the paying party, not the performance party, under *both* the transporting contract with Memco *and* the unloading contract with Kindra. Memco was never a paying party that contracted with Bayou for Bayou to remove its own cargo from the barge; Memco simply limited its own obligation, i.e., its performance under the single transporting contract, to the hauling of Bayou's cargo, never assuming the additional stevedoring "work" of loading or unloading it onto and off of its barge. Consequently, when Bayou thereafter contracted directly with Kindra for Kindra to unload Bayou's cargo at the end of the voyage, Kindra was Bayou's contractor, not its sub-contractor.[29]

Under the law of Louisiana applicable to this area of commerce, it is a legal impossibility for a single performance party to be both the contractor and the sub-contractor of a single paying party while simultaneously performing precisely the same work. A paying party's contractor is one who directly contracts with the paying party to provide a specified performance. By contrast, a paying party's *sub*-contractor is a third party who directly contracts only with the paying party's performance contractor (or another sub-contractor) — but not directly with the paying party itself — to perform some lesser portion of the total performance owed by the performance contractor (or another sub-contractor). Obviously, then, Kindra could not have been both the offloading contractor and the offloading sub-contractor of Bayou simultaneously, and Kindra never entered into any contract with Bayou's other performance contractor, Memco.

Plaintiffs-Appellees nevertheless contended, and the district court agreed, that the Bayou/Kindra stevedoring contract created a contractor/sub-contractor

---

[29] If, for a hypothetical example, Kindra had contracted with a crane contractor to provide and operate a crane during the unloading operation, the crane operator would have been Bayou's sub-contractor, but Kindra would have remained Bayou's contractor.

10

relationship between Bayou and Kindra. In doing so, they rely on the statement in the affreightment contract between Memco and Bayou that "[i]t shall be the obligation of . . . [Bayou], or its consignee, to unload and remove the Cargo from the barge . . . ." The essence of the Plaintiffs-Appellees' argument is that this provision made Bayou the performance contractor of Memco for the removal of the cargo — Bayou's *own* cargo! — from Memco's barge. When that statement is read in the context of the Memco/Bayou contract as a whole, however, Plaintiffs-Appellees' contention is obviously unavailing.

The above-quoted statement on which Plaintiffs-Appellees would rely demonstrates nothing more than complete and careful contract draftsmanship, spelling out, rather than leaving to inference, that Memco's sole performance obligation to Bayou was transportation and did not include the stevedoring function of loading or unloading the cargo. That function always was, and remained, the responsibility of only Bayou as owner of the cargo. It cannot be read to make Bayou a performance party to do the stevedoring as "part of" Memco's "work" because Memco never undertook to do that work in the first place. Indeed, even if we were to agree with Plaintiffs-Appellees (which we do not) that Bayou's retained responsibility for unloading its own cargo from Memco's barge at the end of the voyage somehow made Bayou a performance contractor of Memco, Louisiana law would at most make (1) Memco the principal party, (2) Bayou the prime contractor of Memco, and (3) Kindra (as Bayou's stevedoring contractor) the sub-contractor of *Memco* — but *not* the sub-contractor of *Bayou*. In short, even when viewed in the light urged by Plaintiffs-Appellees, Bayou never had a *sub*-contractor at any stage of these transactions.

This is perhaps best illustrated by comparing the facts of the instant case with a hypothetical example. Suppose that Bayou had elected to contract with XYZ stevedoring to load the cargo in Louisiana and to unload it in Illinois. XYZ would have been Bayou's contractor for purposes of NYMAGIC's policy exclusion,

No. 10-30678

and any XYZ employee injured during the course of the stevedoring work would have been covered. But, in turn, if XYZ had contracted with Kindra to do the *part of* XYZ's stevedoring *work* that consisted of unloading the cargo in Illinois, Kindra would have been Bayou's *sub*-contractor, i.e., the party hired to do part of the work of Bayou's contractor, XYZ, and Kindra's employee would have been excluded from coverage under NYMAGIC's policy.

## IV.  CONCLUSION

As Bayou was the principal party (paying party) and not the prime contractor (performance party) under *both* its barge transportation agreement with Memco and its offloading agreement with Kindra, there is no way for Kindra to have been a sub-contractor of Bayou within the intendment of the NYMAGIC policy's exclusion of coverage for injuries sustained by employees of Bayou's sub-contractors. Kindra contracted directly with Bayou — not with some contractor of Bayou — to offload Bayou's cargo, so Kindra was Bayou's contractor, not its sub-contractor. Consequently, NYMAGIC's coverage exclusion does not apply to Campbell's injuries because he was the employee of a contractor of Bayou, not of a sub-contractor of Bayou. We therefore REVERSE the district court's summary judgment and REMAND this case to that court for further proceedings consistent herewith.