# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 21, 2011

No. 11-30473
Summary Calendar

Lyle W. Cayce
Clerk

BOPP TRUST, Eric Bopp, as Trustee; ARLENE AND JOSEPH MERAUX CHARITABLE FOUNDATION, Floyd Gue, as President; ANDREE PLANCHE HAND; LOUISE BLACK, as Legatee and Successor-in-Interest of the Estate of John Lagattuta; HAROLD V. ROSSELLI, JR., as Legatee and Successor-in-Interest of the Estate of John Lagattuta; GINA R. HERRARA, as Legatee and Successor-in-Interest of the Estate of John Lagattuta; JO ANN ROSSELLI, as Legatee and Successor-in-Interest of the Estate of John Lagattuta; ROSE R. FERRER, as Legatee and Successor-in-Interest of the Estate of John Lagattuta; EVELYN L. HARRIGAN, as Legatee and Successor-in-Interest of the Estate of John Lagattuta; ANTHONY BADALAMENTI, as Legatee and Successor-in-Interest of the Estate of John Lagattuta; GWENDOLYN OKEEFE, as Legatee and Successor-in-Interest of the Estate of John Lagattuta; CYNTHIA B. MARTIN, as Legatee and Successor-in-Interest of the Estate of John Lagattuta; NANCY B. FORTMAYER, as Legatee and Successor-in-Interest of the Estate of John Lagattuta; CARLO UCHELLO, as Legatee and Successor-in-Interest of the Estate of John Lagattuta; NICHOLAS BONOMO, as Legatee and Successor-in-Interest of the Estate of John Lagattuta; FLORENCE B. FONTAN, as Legatee and Successor-in-Interest of the Estate of John Lagattuta,

Plaintiffs-Appellants

v.

CAPITAL ONE, N.A. and all its subsidiaries, formerly known as Hibernia National Bank, and all its subsidiaries,

Defendant-Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:09-CV-6828

No. 11-30473

Before GARZA, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Hurricanes Katrina and Rita, hitting shore three weeks apart in August and September 2005, extensively damaged the Hibernia National Bank building in Arabi, Louisiana. No repairs were made, and the bank did not re-open. At the expiration of the bank's lease in May 2008, possession of the bank building and land returned to the successors of the original lessors. At issue is whether under the terms of the original leases, Capital One had an obligation to restore the bank building to its pre-storm condition. The district court granted summary judgment on the ground that the unambiguous contract terms did not impose that obligation. We AFFIRM.

## BACKGROUND

This case centers on the terms of half-century old commercial leases. In 1958, four individuals who were directors of the St. Bernard Bank & Trust co-owned two contiguous parcels of land in Arabi. They leased one of the parcels to their bank. The lease had a 50-year term that began on May 20, 1958. At about the same time, the St. Bernard Bank entered a contract to construct a bank building on the property. Five years later, three of the original lessors and the heirs of the fourth leased the contiguous tract to St. Bernard Bank. The leases contained identical language and both expired in May 2008.

St. Bernard Bank operated there for many years until the bank was acquired by Hibernia National Bank. Hibernia operated a branch of its bank in the building under the original leases until the hurricanes struck in 2005. Early the following year, Capital One's acquisition of Hibernia became final.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-30473

In April 2009, Bopp Trust and others (collectively, "Bopp Trust"), who are successors to the original lessors of the property, brought suit against Capital One in Louisiana state court. Their claims were for breach of the 1958 and 1963 leases. They sought lost rental income and damages for the cost of projected repairs to restore the building. Capital One removed the action to federal court. In May 2011, the district court granted summary judgment to Capital One, finding there was no obligation to repair. The Bopp Trust appealed.

DISCUSSION

Appellate review of a grant of summary judgment is *de novo*, as we apply the same standard used by the district court. *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 805 (5th Cir. 2007). Summary judgment is proper when there exists no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a).

We apply Louisiana law in this diversity action, "including its principles of contract construction." *Bayou Steel Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 642 F.3d 506, 509 (5th Cir. 2011). Contract interpretation requires an examination of the Louisiana Civil Code and application of general interpretive principles. *Id.* at 509-10. Words and phrases are to be given their plain, ordinary, and "generally prevailing meanings," unless they have acquired some technical definition. La. Civ. Code art. 2047; *Bayou Steel*, 642 F.3d at 510. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046.

St. Bernard Bank constructed its building on the property after the execution of the 1958 lease. Paragraph 6 of both leases provided that "[a]ll buildings and improvements erected . . . shall become property of the Lessor at the expiration or termination of this Lease." As to maintaining the building in

No. 11-30473

good repair, that is the responsibility of the lessor unless made the responsibility of the lessee by contract or otherwise. La. Civ. Code art. 2691.

The lessors contend that Paragraph 3 of the lease did modify these general rules. The pertinent provision states:

> The rental or consideration specified . . . shall be net to the Lessors, free of any and all costs and expenses incurred in complying with the above conditions, *and any and all costs or expenses or liability for damages in connection with the property shall be paid by Lessee.*

(emphasis added).

In determining what that means, we may not analyze the paragraph in isolation. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ. Code art. 2050. The question is what is the meaning of "property" in this provision. Paragraph 1 of the 1958 document provides that the lessors lease "the following described property" to the lessees:

> A CERTAIN TRACT OR PORTION OF GROUND, together with all the rights, ways, privileges, servitudes and appurtenances thereunto belonging or in anywise appertaining, situated at Arabi, in the Parish of St. Bernard, State of Louisiana, which said portion of ground is situated in Section 52 . . . and which portion of ground is a part of TRACT "S" as shown on plat of survey . . . .

The 1963 lease refers to the leased property very similarly: "A certain piece or portion of land, situated at Arabi," and never refers to a building.

Under normal construction, the "property" in Paragraph 3 is the property covered by the lease. The "expenses or liability for damages in connection with the property" are those applicable to the land itself. That interpretation is sensible, considering that when the parties executed the first document that contained this language, the bank building had yet to be erected.

Related language has been interpreted by the Louisiana Supreme Court. *See Pendleton v. Shell Oil Co.*, 408 So. 2d 1341, 1343 (La. 1982). The plaintiffs

4

No. 11-30473

charged that the lessee Shell Oil had breached its lease by demolishing a service station building on the property. *Id.* at 1342. The claimed breach was of a lease provision that "buildings and improvements constructed . . . by Shell, at any time during the term of this lease . . . shall become Lessor's property at the termination of this lease." *Id.* at 1343.

In dismissing the claim, the court reasoned that the lease was a "ground lease," and thus the plaintiffs "did not purport to own the building or seek to include it in the lease premises." *Id.* The court concluded the lease was of the land based on "the provisions of Paragraph 1 which describe the leased premises as a portion of ground 'together with all rights, privileges and apputenances thereto.'" *Id.* at 1343 n.5. "The meaning of the term 'appurtenances' must be gleaned from the context in which it is used. Here it is used with reference to rights and privileges and, thus, does not comprehend buildings . . . ." *Id.*

The description of the property in the lease we are interpreting is quite similar to the description in *Pendleton*. As did the Louisiana court, we conclude that "costs or expenses or liability for damages in connection with the property" applies to the physical ground.[1]

None of the lessors' cited authority suggests a contrary result. The comparison to other contract provisions that embody maintenance and repair obligations, instead, weakens their argument. In the lessors' principal authority, the lease contained a clause whereby the lessee "agrees that it shall at its own cost, risk and expense promptly and with due diligences repair, replace, or

---

[1] The district court allowed the claim for damage to the land itself to go forward. The plaintiffs stipulated to that claim's dismissal, stating that if this court affirmed the summary judgment, that remaining claim would also be considered to be resolved against the plaintiffs.

Capital One argues that Paragraph 3 has certain hallmarks of what is known in the world of commercial realty as a net lease. *See Landry's Seafood House-New Orleans, Inc. v. Bd. of Comm'rs of Orleans Levee Dist.*, 56 So. 3d 380, 392 n.12 (La. Ct. App. 2010); *Degravelles v. Hampton*, 652 So.2d 647, 649 n.1 (La. Ct. App. 1995). There is logic to the argument, but we need not explore it in light of our other conclusions.

restore any and all of the Leased Premises which may become subject of loss, damage or destruction, however caused." *Bd. of Comm'rs of the Port of New Orleans v. Lexington Ins.*, 549 F.Supp. 2d 795, 798 n.5 (E.D. La. 2008). As the district court found in the present suit, no such express duty was created in this lease. Similarly, the Louisiana Court of Appeal found a repair duty in language that obligated the lessee to pay "the cost of any alterations, changes, repairs or reconstruction . . . including those to the roof, sidewalks, or pavements." *Ghisalberti v. Lagarde*, 146 So. 763, 764 (La. Ct. App. 1933).

The lessors attempt to overcome the plain meaning of the lease text with resort to extrinsic evidence of the parties' supposed intent in 1958. We do not find the evidence particularly persuasive, but regardless, Louisiana law does not allow consideration of such evidence. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046.

AFFIRMED.