**SHOWBIZ MULTIMEDIA, LLC; Show-biz Multimedia Entertainment, LLC; and Vinay Karna, Appellants,**

v.

**MOUNTAIN STATES MORTGAGE CENTERS, INC.; Remington Financial Group, Inc.; and Matthew McManus, Appellees.**

No. 01–07–00810–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 8, 2009.

John C. Juravich, Houston, TX, for Appellant.

Mike Johanson, Johanson & Fairless, L.L.P., S. Scott West, The West Law Firm, Sugar Land, TX, for Appellee.

Panel consists of Justices BLAND, SHARP, and TAFT.[*]

## OPINION

JIM SHARP, Justice.

The issue in this appeal is whether arguing that a South Asian–American plaintiff committed "judicial terrorism" and extortion constitutes incurable jury argument. Following the Texas Supreme Court's 2008 opinion in *Living Centers of Texas, Inc. v. Peñalver*, we conclude it is and reverse. *See Peñalver*, 256 S.W.3d 678 (Tex.2008).

## Background

Appellant Vinay Karna is a naturalized United States citizen who was born in India. Karna wished to purchase a motel and formed two corporations as part of that plan, appellants Showbiz Multimedia, LLC and Showbiz Multimedia Entertainment, LLC. Multimedia Entertainment agreed to purchase a motel in Duncanville, Texas, and Karna discussed financing arrangements with Clay Cushing of appellee Mountain States Mortgage Center, Inc.

Cushing allegedly recommended that Karna seek financing with a Costa Rican company called Servicios Amtek, SA. Karna claims that he paid $40,000 to Servicios Amtek for loan financing fees and that Servicios Amtek later "disappeared" without providing any financing. Officials at Mountain States denied that Cushing was authorized to broker a loan for Karna.

Karna next paid a loan broker company, Kilpatrick & Hart, to arrange a loan with appellee Remington Financial Group, Inc. Remington's owner is appellee Matthew McManus. Showbiz Multimedia and Showbiz Multimedia Entertainment signed contracts with Remington, and Karna claims he paid $15,000 to Remington under the contracts. Karna claims that the contracts obligated Remington to provide funding for a loan to purchase the motel if his two companies met certain specified conditions.

Karna contends that even though his companies met all the conditions, Remington and McManus did not fund the loan but instead brokered the loan to yet another company, Meridian Capital Partners, Inc. Karna allegedly paid Meridian approximately $30,000, yet never received a loan from Meridian or anyone else. Finally, Karna and his two companies sued Mountain States, Remington, McManus, and others for breach of contract, breach of fiduciary duty, and fraud.

At trial, Mountain States, Remington, and McManus vigorously countered the plaintiffs' description of the case. During closing argument, Mountain States's counsel stated the following:

> [COUNSEL]: Thank you, Judge.... This lawsuit [is] wrong. They are asking you to perpetuate an injustice. If you award Vinay Karna and his companies any money, it's going to continue in another court with additional Defendants because it will perpetuate an injustice. And what we're asking you to do quite simply is to deny an injustice.
>
> What Mr. Karna has done has identified just the most recent injustice and that is to use this court in a judicial

* Justice Tim Taft, who retired from the First Court of Appeals effective June 1, 2009, continues to sit by assignment for the disposition of this case, which was submitted on March 10, 2009.

terrorism. He has extorted money—attempted to extort money from 21 different groups.

Karna and his companies did not object to this argument at that time, but complained in their motion for new trial.

The argument was not isolated. Counsel also stated, in reference to Karna, that a witness was "scared to death of this man. There's cultural issues. She's scared to death of him which is why she did not...." Karna's counsel objected to this argument. The trial court sustained the objection.

■ Based on the jury's verdict, the trial court rendered judgment (1) "in favor of" Mountain States, Remington, McManus, Secured Capital Resource, LLC, and G. Tyler Hufford and (2) "against" Karna, Showbiz Multimedia, and Showbiz Multimedia Entertainment.[1] Karna, Showbiz Multimedia, and Showbiz Multimedia Entertainment filed a timely notice of appeal.[2] Only Showbiz Multimedia and Showbiz Multimedia Entertainment have filed an appellant's brief, in which they bring three issues against Mountain States, Remington, and McManus regarding incurable jury argument, legal and factual sufficiency, and the admission of evidence.[3]

## Discussion

■ Showbiz Multimedia and Showbiz Multimedia Entertainment's first issue asks this Court to decide whether it was incurable jury argument to say that Karna has committed extortion and "judicial terrorism," considering the Texas Supreme Court's opinion in *Living Centers of Texas, Inc. v. Peñalver.* In that wrongful-death case, the court held that the closing argument of plaintiffs' lawyer was incurable when counsel compared the treatment of the deceased by a nursing home to the Germans' World War II treatment of the elderly in the "T–Four" project. *Peñalver,* 256 S.W.3d at 680–682. The Texas Supreme Court acknowledged that this comment was only made once and that no one argued that the nursing home intended to injure or kill the deceased, much less conduct medical experiments on her. *Id.* at 681. Nevertheless, the supreme court concluded that the argument "struck at the integrity of the courts by utilizing an argument that was improper, unsupported, and uninvited." *Id.* at 682. The supreme court further stated that such argument is not subject to the general harmless error analysis.[4] *Id.* at 681.

Mountain States, Remington, and McManus respond that the jury argument

---

1. Based on the jury's verdict, this was a take-nothing judgment for plaintiffs.

2. Texas Rule of Appellate Procedure 3.1(a) defines an appellant as "a party taking an appeal to an appellate court." Texas Rule of Appellate Procedure 25.1(c) requires a party who seeks to alter the trial court's judgment or other appealable order to file a notice of appeal. *See* Tex.R.App. P. 25.1(c). Karna, Showbiz Multimedia, and Showbiz Multimedia Entertainment all filed a notice of appeal and are, therefore, appellants. Karna, however, did not file a brief and was notified as required by Texas Rules of Appellate Procedure 38.8(a)(1) and 42.3.

3. Texas Rule of Appellate Procedure 3.1(c) defines an appellee as "a party adverse to an

appellant." Unlike an appellant, who must file a notice of appeal and identify himself or herself, an appellee need not be definitively identified until the appellant's brief is filed. An appellee, however, must be a party to the trial court's final judgment and must be someone against whom the appellant raises issues or points of error in the appellant's brief. *See Gray v. Allen,* 41 S.W.3d 330, 331 n. 2 (Tex. App.-Fort Worth 2001, no pet.).

4. A month before the supreme court's *Peñalver* opinion issued, this Court addressed the necessity under the harmless-error rule to analyze incurable jury argument in light of the entire case. *See Arias v. Brookstone, L.P.,* 265 S.W.3d 459, 467 (Tex.App.-Houston [1st Dist.] 2007, pet. denied).

was not about Karna committing "judicial terrorism," extortion, or Karna's ethnicity. Instead, they argue that the "judicial terrorism" comment was a reference to, supported by the evidence, the multiple lawsuits that Karna has filed against numerous defendants. We agree that counsel was entitled to argue that Karna was aggressively litigious and that he filed lawsuits that had no merit, in light of the evidence before the jury of such lawsuits, but the question remains whether the characterization of his conduct as judicial terrorism and extortion, together with the other comments made by counsel, would reasonably leave an incurable impression on the jury in a manner beyond that supported by the evidence.[5] We conclude that it did.

In *Peñalver,* the supreme court re-emphasized how serious a jury argument is that introduces race or other extreme personal attacks. *Id.* at 681 (citing *Standard Fire Ins. Co. v. Reese,* 584 S.W.2d 835, 840 (Tex.1979)). Just as the horrible events of World War II still evoke deep passion and emotion, the ongoing War on Terror colors the interpretation of the word "terrorism." It is not a word to be used lightly in the context of a formal proceeding in court. Furthermore, the description of the plaintiff in this case as having committed extortion and "judicial terrorism" did not stand in isolation-these comments were merely the most egregious. The lawyer for Mountain States stated, in a reference to Karna that is wholly unsupported by the record, that a business associate of Karna's felt "scared to death of this man" due to "cultural issues" and suggested that he was not "somebody that you would entrust

anything to," including "the safety of your children." The subject matter of this case—a commercial lending dispute—does not support this inflammatory sort of appeal to a jury.

The judiciary must at a minimum ensure that a trial is free from improper appeals to race or nationalism that the introduction of the words "terrorism" and "extortion," together with a wholly unsupported reference to "cultural issues" brought into this case. As in *Peñalver,* this type of argument strikes at the heart of the jury trial system and was incurable. Courts must guard against such conduct and correct it sua sponte. TEX.R. CIV. P. 269(g); *Peñalver,* 256 S.W.3d at 681. Because the trial court did not, we sustain issue one.

### Conclusion

In light of our determination of issue one, we do not reach issues two and three. Accordingly, we reverse the portion of the trial court's judgment holding that Showbiz Multimedia and Showbiz Multimedia Entertainment take nothing from Mountain States, Remington, and McManus, and we remand the case to the trial court for further proceedings limited to Showbiz Multimedia and Showbiz Multimedia Entertainment's claims against Mountain States, Remington, McManus. Finally, we dismiss Karna's appeal for want of prosecution for failure to file a brief. *See* TEX. R.APP. P. 38.8(a)(1), 42.3.

Justice TAFT, concurring.

TIM TAFT [1], Justice, concurring.

The Majority Opinion is understandable in its dutiful obeisance to the per curiam

---

5. Counsel for Mountain States made the former sort of argument, too. For example, he argued without objection that the lawsuit was brought "in bad faith from the beginning and it was perpetuated in bad faith," and told the jury that its members were "absolutely pro-

tected" from Karna suing them, if they were wondering if he could.

1. The Honorable Tim Taft, retired Justice, Court of Appeals for the First District of Texas, participating by assignment in a case sub-

opinion of the Texas Supreme Court in *Living Centers of Texas, Inc. v. Peñalver,* 256 S.W.3d 678 (Tex.2008). Because I find the approach of the majority opinion of the Fourth Court of Appeals in *Living Centers of Texas, Inc. v. Peñalver,* 217 S.W.3d 44 (Tex.App.-San Antonio 2006), *rev'd,* 256 S.W.3d 678 (Tex.2008) to be more sound, I respectfully concur.

The majority opinion of the Fourth Court of Appeals followed the prevailing standard of review and analyzed the claim of incurable error in jury argument by viewing the argument in light of the entire record. *Id.* at 51. The per curiam opinion of the Texas Supreme Court relied on the leading case of *Standard Fire Insurance Co. v. Reese,* 584 S.W.2d 835 (Tex.1979) for several propositions. *See Peñalver,* 256 S.W.3d at 680–81. When it came to the standard of review, however, it ignored the standard of looking at the whole record and chose instead, without citing any authority, to expressly reject the general harmless error analysis. *Id.* at 681.

The problem that I see in rejecting a general harmless error analysis that includes viewing the complained-of argument in the context of the record of the trial as a whole is that it devolves into a question of whether the argument in isolation shocks the particular panel of justices making the call. Accordingly, I urge the Texas Supreme Court to reconsider its per curiam opinion in *Peñalver* with a view toward returning this area of the law to its more objective precedent.

mitted prior to his retirement on May 31,