**Opinion issued August 11, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00860-CV

———————————

## JOSEPH W. PEINE, Appellant

## V.

## ELITE AIRFREIGHT, INC., Appellee

On Appeal from the 189th District Court
Harris County, Texas
Trial Court Case No. 2008-61097

## MEMORANDUM OPINION

Appellant Joseph W. Peine appeals from a directed verdict rendered against

him in his breach of contract suit against appellee Elite Airfreight, Inc.[1] In three

---

[1]  The trial court also granted a directed verdict against appellant on his claims against another defendant, Advanced Logistics Services, Inc. (ALSI). Appellant is not challenging this ruling on appeal. Because ALSI did not file a notice of appeal in

issues, appellant argues that the trial court: (1) erred by granting the directed verdict, (2) abused its discretion by excluding the testimony of Elite's former legal counsel, and (3) abused its discretion by sealing portions of the record. We affirm.

## Background

Appellant sued Elite for breach of contract.[2] In his live pleading at trial, appellant pleaded that Elite and Schlumberger Technology Corporation were the sole parties to a contract to manage inventory for Schlumberger, Elite formed and used Advanced Logistics Services, Inc. (ALSI) to manage the Schlumberger inventory, and that Elite and ALSI were joint venturers or members of a joint enterprise. Appellant further alleged that problems had arisen in managing the inventory and that Elite hired him as a general manager in October 2002 "to turn around the Schlumberger inventory control problems," and "to salvage the Schlumberger contract." Specifically, appellant alleged that he entered into five one-year service contracts with Elite from 2002 to 2006, and that under the terms of those contracts, Elite agreed to pay appellant a salary, plus "a fifty percent (50%) bonus

---

this case and appellant did not raise any issues or points of error in his brief against ALSI, ALSI is not a party to this appeal. *See Showbiz Multimedia, LLC v. Mountain States Mortg., Ctrs., Inc.*, 303 S.W.3d 769, 771 nn.2, 3 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (citing TEX. R. APP. P. 3.1(a), (c), 38.8(a)(1) and 42.3; *Gray v. Allen*, 41 S.W.3d 330, 331 n.2 (Tex. App.—Fort Worth 2001, no pet.)).

[2] Appellant also asserted claims against Elite for quantum meruit, common law fraud, conversion, tortious interference with a prospective relationship, and slander and/or defamation of business reputation, but the trial court granted summary judgment on those claims, and appellant is not challenging those rulings on appeal.

2

of the gross profits Elite showed for [that] calendar year."[3] Appellant alleged that Elite materially breached all five contracts by failing to pay appellant his bonus any of those years.

At trial, appellant testified that he met with Elite's president, Bobby Hale, in October 2002 to discuss employment. Appellant's brother, Edward Peine, who was Elite's attorney, had initially approached appellant about the opportunity and was present at the meeting.

Appellant testified that during that meeting Hale hired him to be the "General Manager of a cost center for Elite," that appellant identified as ALSI. Appellant explained that although Hale did not describe it as such, appellant understood that he was being hired to manage a "warehouse operation that was run for the benefit of Elite which [appellant] interpreted to be a cost center." When asked if he and Hale had a discussion about whom appellant would be working for, appellant answered: "I was working for Elite."

According to appellant, he and Hale agreed to model appellant's compensation on a written employment contract that ALSI had with one of appellant's predecessors. Hale told appellant that although that employee's contract

---

[3]    Appellant attempted unsuccessfully to amend his petition two more times after the docket control order's pleading amendment deadline had passed. The trial court struck appellant's Third Amended Petition and denied appellant leave to file his Fourth Amended Petition.

had been with ALSI, ALSI no longer existed as an entity and all of ALSI's stock had been transferred to Elite. Hale also informed appellant that instead of receiving stock in the company, as his predecessor had, appellant would receive a bonus of 50% of the business's gross profits. Appellant also testified that in January 2003, January 2004, January 2005, and January 2006, he and Hale reaffirmed their October 2002 employment agreement, under the terms of which appellant's compensation included a bonus of "50 percent of ALSI's gross profit."

Appellant testified that he started working for Elite the next day. The record includes a number of forms that appellant completed when he began working in 2002, including a substance abuse prevention policy that identified both "Elite Air Freight Inc./Administaff" and ALSI as appellant's employer. All of the other forms admitted in evidence at trial, as well as appellant's W-2 forms for 2002-2006, identified appellant's employer as either ALSI or Administaff. Furthermore, appellant drafted two résumés after April 2006 in which he claimed that he had been employed as a warehouse manager for ALSI from October 2002 to April 2006. The record also contains emails and other correspondence between Hale and appellant, as well as transcripts of recorded conversations between appellant and one or more of Elite's shareholders in 2006.

Appellant's brother, Edward, served as Elite's legal counsel until 2003 in a wide variety of corporate and litigation matters and also represented ALSI for many

years. Edward was deposed prior to trial after appellant designated him as a fact and expert witness in the case. At trial, the court sustained Elite's objection to Edward's testimony based on attorney-client privilege. In a bill of exceptions, Edward explained that he would have offered testimony at trial describing the content of conversations that he claims to have had with Hale about the companies' financial health, business deals, employment matters, and the terms of future potential contracts. Among other things, Edward explained that he attended Hale's October 2002 meeting with appellant and he would testify as to the contents of that meeting. Appellant's proffer includes Edward's live testimony and the transcript of Edward's deposition testimony, both of which were filed under seal with this court.[4] At the close of appellant's case, the court granted a directed verdict in favor of Elite.

## Directed Verdict

In his first issue, appellant argues that the trial court erred by rendering a directed verdict against him because he produced some evidence of each element of his breach of contract claims against Elite.

### A. Standard of Review

We review directed verdicts under the same legal-sufficiency standard that applies to no-evidence summary judgments. *City of Keller v. Wilson*, 168 S.W.3d

---

[4] The trial court also sealed the exhibits to appellant's responses to the defendants' no-evidence and traditional motions for summary judgment that were filed in 2009. Appellant is not specifically complaining about the sealing of these materials.

802, 823–24 (Tex. 2005); *see also Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013) (citing *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750 (Tex. 2003)). We sustain a legal-sufficiency point when (1) there is a complete absence of evidence regarding a vital fact, (2) rules of law or evidence preclude according weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810. We consider the evidence in the light most favorable to the nonmovant, crediting evidence a reasonable jury could credit and disregarding contrary evidence and inferences unless a reasonable jury could not. *Id.* at 827. Conclusive evidence cannot be disregarded. *See id.* at 816 ("Evidence is conclusive only if reasonable people could not differ in their conclusion.") The nonmovant bears the burden to identify evidence before the trial court that raises a genuine issue of material fact as to each challenged element of its cause of action. *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 210 (Tex. 2002). A directed verdict in favor of the defendant is proper if the plaintiff "fails to present evidence raising a fact issue essential to [its] right of recovery," or "admits or the evidence conclusively establishes a defense to [its] cause of action." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). We may affirm a directed verdict on any ground that

supports it. *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 443 (Tex. App.—Dallas 2002, pet. denied).

**B.     Applicable Law**

To prevail on a breach-of-contract claim, a party must prove that (1) a valid agreement between plaintiff and defendant existed, (2) the plaintiff performed or tendered performance, (3) the defendant breached the agreement, and (4) the plaintiff sustained damages as a result of the breach. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 150 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (citing *Prime Prods., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied)). The elements of a valid contract are: (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *See Beverick*, 186 S.W.3d at 150 (citing *Prime Prods.*, 97 S.W.3d at 636). The necessary elements of written and oral contracts are the same and must be present for a contract to be binding. *See Wal–Mart Stores, Inc. v. Lopez*, 93 S.W.3d 548, 555 (Tex. App.—Houston [14th Dist.] 2002, no pet.). In determining the existence of an oral contract, courts look to the communications between the parties and to the acts and circumstances surrounding those communications. *Beverick*, 186 S.W.3d at 150–51 (citing *Prime Prods.*, 97 S.W.3d at 636).

## C.     Analysis

Elite argues that the trial court correctly granted a directed verdict on appellant's breach of contract claims because the evidence was legally insufficient to establish that a meeting of the minds occurred with respect to the amount of profits that appellant was promised and there was no evidence that appellant incurred any damages as a result of the alleged breach of the 2002 contract.

Appellant testified in great detail about a meeting he had with Hale, Elite's president, in October 2002 during which time Hale offered to hire him to work for Elite managing the warehousing business that serviced Elite's Schlumberger contract. The discussion centered on an examination of a written contract that had been executed by ALSI and a previous manager whose place appellant was taking. Appellant and Elite did not enter into a written contract but had an oral agreement which incorporated some, but not all, of the provisions of the previous employee's written contract.

Appellant testified that he and Hale agreed that appellant's compensation included an annual base salary of $120,000, plus a bonus of 50% of the gross profits from the warehousing business.[5] Appellant also testified at trial in 2014 that he and

[5]     Appellant testified that although ALSI is a separate legal entity from Elite, ALSI and Elite shared common finances and control. According to appellant, ALSI ran the warehousing business that serviced Elite's Schlumberger contract and Schlumberger was ALSI's only customer.

Hale reached agreements in January 2003, January 2004, January 2005, and January 2006 that, in his opinion, reaffirmed their 2002 employment agreement which entitled him to a bonus of "50 percent of ALSI's gross profit" for each year. Appellant did not offer testimony of any additional facts to support his assertion relating to the formation of the alleged 2003-2006 oral employment contracts.

Appellant further testified that although he managed the warehousing business from 2002 to 2006, he never received the full amount of the bonus he was owed. Appellant also offered evidence at trial showing the gross profits derived from the warehousing business from 2003-2006 that his unpaid bonus was supposedly based upon, as well as the amount of compensation he actually received during his employment. Appellant testified that he was not owed any bonus for 2002.

Elite argues that the trial court correctly granted a directed verdict in its favor on appellant's 2002 breach of contract claim because appellant did not present any evidence to support the damages element of that claim. Although appellant alleged that Elite materially breached the 2002 contract by failing to pay him his bonus for that year, appellant testified at trial that he was not owed any bonus for 2002. Thus, appellant's testimony establishes that he was not damaged by Elite's alleged breach of the 2002 contract because appellant was not owed a bonus for that year. Accordingly, the trial court did not err in granting a directed verdict in Elite's favor with respect to appellant's claim for breach of the 2002 oral contract.

9

Appellant's 2014 trial testimony that he believed that he and Hale had reached agreements in 2003, 2004, 2005, and 2006 that, in his opinion, reaffirmed their 2002 agreement for those years is not evidence of a meeting of the minds sufficient to constitute an agreement that appellant would receive a bonus of 50% of ALSI's gross profits for 2003–2006. *See Celmer v. McGarry*, 412 S.W.3d 691, 702 (Tex. App.—Dallas 2013, pet. denied) ("But Celmer's subjective belief about terms of a purported second agreement several years after it was allegedly formed is not evidence of a meeting of the minds sufficient to constitute an agreement that McGarry would receive 50% of Celmer's entire recovery, plus $200 per hour for his services, plus expenses."); *see also Paciwest, Inc. v. Warner Alan Props., LLC*, 266 S.W.3d 559, 567–68 (Tex. App.—Fort Worth 2008, pet. denied) (determination of whether meeting of minds has occurred is based on objective standard; evidence of party's subjective belief years later of what contract says or whether amendment occurred is not relevant to whether there was meeting of minds sufficient to amend contract).

There is no other evidence in the record supporting appellant's claims that he and Elite entered into one-year oral employment contracts in January 2003, January 2004, January 2005, and January 2006, and that both parties agreed that appellant would be paid a 50% bonus based on gross profits for those years. *See Beverick*, 186 S.W.3d at 150 (setting forth elements of valid oral contract, including "meeting of the minds," and stating that existence of valid contract is essential element of breach

10

of contract claim). Because appellant has failed to present sufficient evidence that he and Elite had a meeting of the minds with respect to the alleged 2003, 2004, 2005, and 2006 oral contracts, the trial court did not err in rendering a directed verdict against appellant on these claims. *See Prudential Ins. Co. of Am.*, 29 S.W.3d at 77; *City of Keller*, 168 S.W.3d at 810.

We overrule appellant's first issue with respect to appellant's claims for breaches of the 2002, 2003, 2004, 2005, and 2006 oral contracts.

### Exclusion of Testimony and Sealing of Portion of Court's Record

In his second and third issues, appellant argues that the trial court abused its discretion when it excluded Edward's testimony and sealed a portion of the record based upon the court's erroneous conclusion that Edward's testimony was protected by the attorney-client privilege.

### A.    Standard of Review

We review a trial court's exclusion of evidence and its decision to seal court records for an abuse of discretion. *See U–Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012) (exclusion of evidence); *BP Prods. N. Am., Inc. v. Hous. Chronicle Publ'g Co.*, 263 S.W.3d 31, 34 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (sealing of court records). A trial court abuses its discretion if it acts without regard for guiding rules or principles. *U–Haul Int'l, Inc.*, 380 S.W.3d at 132; *BP Prods. N. Am., Inc.*, 263 S.W.3d at 34. We can only reverse the trial court's

11

judgment, however, if the error probably caused the rendition of an improper judgment or prevented appellant from properly presenting his case on appeal. TEX. R. APP. P. 44.1(a); *see also Madison v. Williamson*, 241 S.W.3d 145, 151 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

We construe orders and contracts under the same rules of interpretation. *See Icon Benefit Adm'rs II, L.P. v. Mullin*, 405 S.W.3d 257, 264 (Tex. App.—Dallas 2013, orig. proceeding [mand. denied]); *Payless Cashways, Inc. v. Hill*, 139 S.W.3d 793, 795 (Tex. App.—Dallas 2004, no pet.). When a written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, the court will construe the document as a matter of law. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

## B. Attorney-Client Privilege

The attorney-client privilege is governed by Rule 503 of the Texas Rules of Evidence. TEX. R. EVID. 503. Under this rule, a "client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made to facilitate the rendition of professional legal services to the client." *Id.* 503(b)(1). The client waives the attorney-client privilege if he discloses or consents to the disclosure of any significant part of the privileged matter, unless such disclosure itself is privileged. *See* TEX. R. EVID. 511(1); *see also In re JDN Real Estate–McKinney L.P.*, 211 S.W.3d 907, 922–23 (Tex. App.—Dallas 2006,

orig. proceeding [mandamus denied]) (stating general rule that no attorney-client privilege attaches to communications made in presence of or disclosed to third party).

## C. Analysis

Appellant argues that Elite waived its attorney-client privilege when it deposed Edward and elicited testimony from its former legal counsel divulging information and communications that Elite now claims are privileged. Elite contends that it did not waive the attorney-client privilege by taking Edward's deposition because the deposition was taken pursuant to a confidentiality order which "preserved the parties' rights to assert the confidentiality of any information in this suit."

The parties entered into an Agreed Confidentiality and Protective Order (Order) prior to Edward's deposition. The Order states in part:

> Neither the taking of, nor the failure to take, any action to enforce the provisions of this Order, nor the failure to object to any act or omission, waives any claim or defense in this lawsuit, including any claim or defense that information is or is not proprietary, secret, or confidential.

Citing to this language, Elite argues on appeal that the Order "make[s] clear that the parties were free to engage in discovery to determine the underlying facts of this dispute, without waiving any subsequently asserted claim, defense, or privilege."

Elite's attempt to shoehorn the facts of this case into the Order's non-waiver clause is of no avail. The plain language of the Order states that a party does not

waive any claim or defense under two circumstances: (1) by taking (or not taking) "any action to enforce the provisions of [the] Order," or (2) by "fail[ing] to object to any act or omission."[6] The alleged waiver in this case is not the result of Elite's attempt to enforce the Order, failure to enforce the Order, or Elite's failure to object to any act or omission. On the contrary, the conduct at issue here involves affirmative actions taken by Elite during the course of this litigation—specifically, Elite's counsel's eliciting of testimony from Edward regarding information that Edward acquired during his representation of Elite and ALSI, and communications between Edward and Hale, including the 2002 meeting between them—information and communications that Elite now contends are privileged. These affirmative steps taken by Elite are not covered by the plain language of the Order. *See Coker*, 650 S.W.2d at 393.

After the trial court excluded Edward's testimony, appellant's testimony was the only evidence before the court when it rendered a directed verdict against appellant. Nevertheless, we cannot say that the exclusion of Edward's testimony probably caused the rendition of an improper judgment with respect to appellant's breach of contract claims because appellant admitted at trial that he was not owed

---

[6] The Order generally prohibits the disclosure of "[a]ll information, Documents, and Confidential Information produced in this lawsuit . . . to any person or entity which is not a party, except as otherwise provided in this Order." Neither party alleges that the Order has been violated.

any bonus for 2002, thus establishing that he was not harmed by Elite's alleged breach of that contract. Edward does not claim to have any knowledge about the formation of the remaining oral contracts in 2003, 2004, 2005, and 2006.

Accordingly, we cannot say that the exclusion of Edward's testimony was harmful with respect to any of appellant's breach of contract claims. *See* TEX. R. APP. P. 44.1(a); *Madison*, 241 S.W.3d at 151. We overrule appellant's second issue. In light of our disposition, we need not reach appellant's third issue.

**Conclusion**

We affirm the trial court's judgment.


Russell Lloyd
Justice


Panel consists of Justices Higley, Huddle, and Lloyd.