**Affirmed and Opinion filed November 22, 2022.**



**In The**

# Fourteenth Court of Appeals

---

**NO. 14-22-00026-CV**

---

## THE OHIO CASUALTY INSURANCE COMPANY, Appellant

**V.**

## PATTERSON-UTI ENERGY, INC.; PATTERSON-UTI MANAGEMENT SERVICES, LLC; PATTERSON-UTI DRILLING COMPANY, LLC; AND MARSH USA, INC., Appellees

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2020-15199**

## O P I N I O N

Must an excess policy "following form" seeking to exclude coverage for defense costs—when the primary policy "followed" provides coverage for defense costs as damages—clearly and unambiguously identify its divergence from the primary policy? We conclude the answer is yes, and the excess policy in this appeal did not clearly and unambiguously exclude defense costs.

Appellant The Ohio Casualty Insurance Company was an excess insurer for appellees Patterson-UTI Energy, Inc.; Patterson-UTI Management Services, LLC; and Patterson-UTI Drilling Company, LLC (together the Patterson Companies). After Ohio Casualty refused to pay defense expenses on a claim, the Patterson Companies sued Ohio Casualty for breach of contract. The trial court rendered summary judgment for Patterson on their claims against Ohio Casualty after determining the Ohio Casualty policy covered defense expenses. This appeal presents a coverage dispute over whether defense expenses were covered by Ohio Casualty's excess policy "following form" from a primary policy that covered defense expenses. In four related issues, Ohio Casualty asks this court to reverse the trial court's summary judgment based on Ohio Casualty's construction of the excess policy. We overrule Ohio Casualty's issues and affirm.

## I.    BACKGROUND

Appellee Marsh USA, Inc., the Patterson Companies' insurance broker, secured a primary policy followed by a series of excess policies for the 2017–2018 year that provided coverage for the Patterson Companies against any claims made against the Patterson Companies arising out of their operations. Communications between Marsh and the Patterson Companies reflect that the Patterson Companies intended to purchase coverage for defense expenses in all policies in the series of primary and excess policies.

The Patterson Companies were sued for a personal injury/negligence claim that resulted in a large settlement triggering coverage under the primary policy as well as the applicable excess policies. The Ohio Casualty excess policy provided coverage after the primary policy and two other excess policies were exhausted. The Patterson Companies made a claim on the excess policy to cover the damages awarded against them, as well as their defense expenses. Ohio Casualty funded its

2

portion of the settlement within policy coverage but refused to indemnify or provide coverage for the Patterson Companies' defense expenses. Ohio Casualty's position was the excess policy did not cover defense expenses.

The Patterson Companies sued Ohio Casualty for breach of the insurance contract and for violation of Insurance Code section 542. *See* Tex. Ins. Code Ann. § 542.058. In the alternative, the Patterson Companies made claims against Marsh for negligence, fraud, breach of contract and violation of Insurance Code section 541. *See* Tex. Ins. Code Ann. §§ 541.003, .051. After the parties filed competing summary-judgment motions, the trial court granted the Patterson Companies' summary-judgment motion, determining that the defense expenses sought by the Patterson Companies were covered under the excess policy because the policy did not clearly and unambiguously exclude coverage for defense expenses. The parties later moved for entry of judgment in conformity with the trial court's summary-judgment ruling. A final summary judgment was entered in December 2021 disposing of all parties and all claims.[1, 2]

---

[1] The final judgment provides that the Patterson Companies take nothing on their claims against Marsh because of the trial court's conclusion that the excess policy provided coverage for defense costs. The final judgment further provides that if the court of appeals or the supreme court "ultimately decide that the defense costs sought by [the Patterson Companies] are not covered under the Ohio Casualty Policy at issue in this case, then the take-nothing judgment against Marsh also be reversed and [the Patterson Companies'] claims against Marsh be remanded to this Court for a trial on the merits in this case." We do not reach the issue in light of our disposition of this appeal; however, we are skeptical of the proposition that a lower court's judgment can compel the rendition of a specific judgment by the higher court.

[2] Because Marsh is a party to the underlying judgment, adverse to Ohio Casualty, whose interests may be materially affected by the relief appellant requests in this appeal, Marsh is an appellee in this appeal. *See* Tex. R. App. P. 3.1(c), 25.1(c) (defining appellee); *Showbiz Multimedia, LLC v. Mountain States Mortg. Ctrs., Inc.*, 303 S.W.3d 769, 771 n.2 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

## II. ANALYSIS

Ohio Casualty raises four issues on appeal: (1) the trial court erred in summarily adjudicating that defense expenses are covered under the excess policy; (2) the trial court erred in granting the Patterson Companies' summary-judgment motion; (3) the trial court erred in denying Ohio Casualty's summary-judgment motion; and (4) the trial court's errors support reversal and rendition of judgment that the Patterson Companies take nothing on its claims against Ohio Casualty. All four issues require resolution of the same legal issue: whether the excess policy provided coverage for defense expenses.

### A. Applicable law

#### 1. Standard of review

We review a trial court's granting of a summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The movant on a traditional motion for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). If the movant satisfies this initial burden on the issues expressly presented in the motion, then the burden shifts to the nonmovant to present to the trial court any issues or evidence that would preclude a summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979).

#### 2. Burden to establish coverage

An insured has the initial burden of establishing coverage under the terms of the policy. *JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 603 (Tex. 2015). To avoid liability, the insurer then has the burden to plead and prove

that the loss falls within an exclusion to the policy's coverage. *Id.*; Tex. R. Civ. P. 94 ("Where the suit is on an insurance contract which insures against certain general hazards, but contains other provisions limiting such general liability, the party suing on such contract shall never be required to allege that the loss was not due to a risk or cause coming within any of the exceptions specified in the contract, nor shall the insurer be allowed to raise such issue unless it shall specifically allege that the loss was due to a risk or cause coming within a particular exception to the general liability[.]"). "If the insurer proves that an exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within coverage." *JAW The Pointe*, 460 S.W.3d at 603 (quoting *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010)).

The Patterson Companies generally established coverage under the terms of the policy. We must now decide whether Ohio Casualty established the disputed loss falls within an exclusion or limitation to the excess policy's coverage.

### 3. Rules of construction

Texas courts construe insurance policies "using ordinary rules of contract interpretation." *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017). When doing so, courts must "determin[e] the parties' intent as reflected in the terms of the policy itself." *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 831 (Tex. 2009). Courts must "examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless." *Gilbert*, 327 S.W.3d at 126. "[N]o one phrase, sentence, or section [of a contract] should be isolated from its setting and considered apart from the other provisions." *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994) (quoting *Guardian Trust Co. v. Bauereisen*, 121 S.W.2d 579, 583 (Tex. 1938)). "Unless the

policy dictates otherwise, [courts] give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage." *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015) (citing *Gilbert*, 327 S.W.3d at 126).

If we determine that only one party's interpretation of the insurance policy is reasonable, then the policy is unambiguous and the reasonable interpretation should be adopted. *Nassar*, 508 S.W.3d at 258. Alternatively, if we determine that both interpretations are reasonable, then the policy is ambiguous. *Id*. In that event, "we must resolve the uncertainty by adopting the construction that most favors the insured," and because we are construing a limitation on coverage, we must do so "even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *RSUI*, 466 S.W.3d at 119 (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991)).

When interpreting the scope of policy limitations or exclusions, we must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent. *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 668 (Tex. 2008) (internal citation omitted). Exceptions or limitations on liability are strictly construed against the insurer and in favor of the insured, and "[a]n intent to exclude coverage must be expressed in clear and unambiguous language." *Id*. (internal citation omitted). Therefore, we must adopt the Patterson Companies' interpretation of coverage unless there is "clear and unambiguous" policy language excluding coverage for defense expenses.

**B. The excess policy**

Ohio Casualty contends the trial court erred in determining that the excess policy covered defense expenses and argues the excess policy defined the term "loss" to replace or supersede any conflicting definition in the primary policy that might include broader coverage. We start from the ground up, first examining the terms of the primary policy and then looking to the excess policy to determine coverage.

The primary policy provides liability coverage arising out of the Patterson Companies' operations. The coverage provided is based on what the policy terms "ultimate net loss"—a defined term in the policy:

> Underwriters agree, subject to the Insuring Agreements, Conditions, Exclusions, Definitions and Declarations contained in this Policy, to indemnify the "Insured" in respect of its operations anywhere in the World, and any "Additional Insured" as far as applicable for "Ultimate Net Loss" by reason of liability:
>
> (a) imposed upon the "Insured" by law or
>
> (b) assumed by the "Insured" under an "Insured Contract",
>
> for damages in respect of:
>
> (i) "Bodily Injury"
>
> (ii) "Personal Injury"
>
> (iii) "Property Damage"
>
> (iv) "Advertising Injury"

In the primary policy, "ultimate net loss" is defined to mean "the amount the 'Insured' is obligated to pay, by judgement or settlement, as damages resulting from an 'Occurrence' to which this Policy applies, including the service of suit, institution of arbitration proceedings and all 'Defence Expenses'[3] in respect of

---

[3] The primary policy issued by Liberty Mutual Insurance Europe Limited uses the British spelling of the word "defence."

such 'Occurrence.'" In addition, in the primary policy, the term "Defence Expenses" is defined to mean "investigation, adjustment, appraisal, defence and appeal costs and expenses and pre and post judgement interest, paid or incurred by or on behalf of the 'Insured.'"

There is no dispute the primary policy covered the defense expenses of the Patterson Companies, including their attorney's fees. The dispute is whether the excess policy adopted the terms and definitions of the primary policy such that the excess policy was obligated to pay the Patterson Companies' defense expenses, or whether the excess policy replaced the definitions in the primary policy so that coverage for defense expenses was never part of the excess policy.

The excess policy contains a "following form" provision. *See RSUI*, 466 S.W.3d 113, 122 (Tex. 2015) ("follow form" policy is generally subject to terms and conditions of primary policy except when excess policy expressly modifies terms); *TotalEnergies Petrochemicals & Ref. USA, Inc. v. Kinder Morgan Petcoke, LP*, No. 14-20-00661-CV, 2022 WL 4241469, at *3 n.2 (Tex. App.—Houston [14th Dist.] Sept. 15, 2022, no pet. h.) (citing *Bayou Steel Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*., 642 F.3d 506, 509 (5th Cir. 2011)) ("following form" excess liability policy incorporates by reference all terms and conditions of primary insurance policy). This provision states that the excess policy will "follow the 'first underlying insurance'" "[e]xcept for the terms, conditions, definitions and exclusions of this policy." The "first underlying insurance" is the primary policy.

### 1.    Excess policy does not unambiguously exclude defense expenses

Ohio Casualty argues the excess policy unambiguously excludes defense expenses. It maintains that, although a "following form" policy, the excess policy does not follow the definition of "ultimate net loss" and instead defines coverage based on a new, different definition of "loss" that does not include defense

8

expenses. Ohio Casualty rejects the notion that it was required to expressly exclude defense expenses because it argues the excess policy never followed the primary policy as to coverage and terms. This argument—restated—is that by including a definition of "loss" in the excess policy, such definition implicitly diverged from similar terms and related language in the primary policy.

The excess policy, although following the form of the primary policy, does not refer to or mention "ultimate net loss." It also does not contain any independent definition of "defence expenses" or "damages." To this end, the Patterson Companies argue the definition of "loss" in the excess policy does not supplant "ultimate net loss" and exists in harmony with the terms and definitions in the primary policy. The Patterson Companies specifically note that the primary policy uses the defined term "ultimate net loss" but also uses the term "loss," though not as a defined term but in its ordinary meaning.[4]

The excess policy provides that it will pay the amount of "loss" covered by the policy in which loss is defined as "those sums actually paid in the settlement of satisfaction of a claim which you are legally obligated to pay as damages after making proper deductions for all recoveries and salvage." However, the excess policy contains no definition of damages. Because the excess policy contains no independent definition of damages or disavowal of the definitions in the primary policy, we look to the primary policy to determine if there is an applicable definition or scope for "damages" that is followed by the excess policy. The primary policy does not use "damages" as a defined term but in the definition of

---

[4] The Patterson Companies also argue that the excess policy defines "loss" to modify coverage in the primary policy by requiring the Patterson Companies to deduct "all recoveries and salvage" from the "damages" that it asks Ohio Casualty to pay. The Patterson Companies argue this modification does not change the meaning assigned to the term "damages" in the primary policy nor does it supplant that definition. In the Patterson Companies' view, this modification further illustrates that the excess policy could have excluded other types of costs from the "damages" coverage.

9

"ultimate net loss" explains that the damages covered by the policy include "the service of suit, institution of arbitration proceedings and all 'Defence Expenses' in respect of such 'Occurrence.'"

Ohio Casualty argues the term "damages" should be understood using its ordinary meaning and that the commonly accepted meaning does not include attorney's fees or litigation expenses. However, while courts generally do give words and phrases in insurance policies their ordinary and accepted meaning unless otherwise defined in the policy, Ohio Casualty offers little explanation of why this court should look to the ordinary meaning of "damages" when the primary policy, which the excess policy follows, already defines the scope and meaning of damages. *See Gilbert*, 327 S.W.3d at 126. In any event, *Black's Law Dictionary* defines damages as "money claimed by, or ordered to be paid to, a person as compensation for loss or injury." *Damages*, *Black's Law Dictionary* (11th ed. 2019). The Patterson Companies' payment of attorney's fees and defense expenses could certainly be described as a loss to the Patterson Companies.

In its appellant briefing, the only authority cited by Ohio Casualty in support of this argument is a supreme court case addressing whether the term "compensatory damages," as used in Civil Practice and Remedies Code chapter 52 includes attorney's fees incurred in the prosecution or defense of a claim. *See In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 169 (Tex. 2013) (citing Tex. Civ. Prac. & Rem. Code Ann. § 52.006). However, *Nalle Plastics* is not relevant to the question before us. *Nalle Plastics* did not address the ordinary or generally accepted definition of the word "damages." It was specifically construing the meaning of "compensatory damages," as used in the statute setting the amount of security required to appeal a judgment. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 52.001, .006; *Nalle Plastics*, 406 S.W.3d at 172–73. Therefore, Ohio Casualty's

10

argument that the ordinary meaning of "damages" weighs against coverage for defense expenses is not persuasive.

To the extent Ohio Casualty attempts to broadly establish that an excess policy covering "damages" does not provide coverage for defense expenses, the only other case relied on by Ohio Casualty for this proposition does not speak so broadly and is distinguishable from the policy in this case. *See Westchester Fire Ins. Co. v. Stewart & Stevenson Servs, Inc.*, 31 S.W.3d 654, 659–60 (Tex. App.— Houston [1st Dist.] 2000, pet. denied) (excess policy did not cover defense expenses because excess policy specifically deleted former definition of "loss" covering defense expenses and inserted new definition of "loss" excluding defense expenses).

Ohio Casualty further argues it was not required to exclude coverage of defense expenses because the policy never provided any coverage of defense expenses. However, this argument requires acceptance of Ohio Casualty's premise that the definition of "loss" implicitly deleted and superseded the definition of "ultimate net loss" and scope of damages covered by the primary policy. However, we find no support in the excess policy for Ohio Casualty's argument. The excess policy specifically states that it will "follow" the primary policy and provide the same coverage as in the primary policy, unless excluded or specifically conditioned in the excess policy. There is no language in the excess policy, let alone clear and unambiguous language, excluding defense costs from coverage under the excess policy. We are also troubled by the public-policy ramifications of accepting Ohio Casualty's argument as it conceivably could open the door for vague language in excess policies to implicitly diverge from primary policies in "follow form" excess policies with far-reaching financial consequences for insureds. Because the intent to exclude coverage for defense expenses was not

expressed in clear and unambiguous language in the excess policy, we conclude that the Patterson Companies' interpretation of coverage is reasonable. *See ATOFINA Petrochemicals*, 256 S.W.3d at 668; *see generally RSUI*, 466 S.W.3d at 139 ("[I]nsurers who use the same or similar endorsements, can provide the clarity needed to resolve these issues by significantly revising the endorsement to say what the insurers really want it to mean.").

### 2. The duty to defend is distinct from the duty to indemnify

The excess policy contains a section entitled "Defense" providing the following terms or conditions:

> A. We will not be required to assume charge of the investigation of any claim or defense of any suit against you.
>
> B. We will have the right, but not the duty, to be associated with you or your underlying insurer or both in the investigation of any claim or defense of any suit which in our opinion may create liability on us for "loss." If we exercise such a right, we will do so at our own expense, but not after the limits of the policy are exhausted.

Ohio Casualty argues this language supports its argument that the excess policy does not provide coverage for defense expenses because the language above would be rendered "redundant and meaningless" by an interpretation of the policy providing coverage for defense expenses. However, this argument conflates the duty to defend with the duty to indemnify.

Typically, in a general-liability policy an insurer agrees to defend and indemnify its insured for covered risks. "An insurer must defend its insured if a plaintiff's factual allegations potentially support a covered claim, while the facts actually established in the underlying suit determine whether the insurer must indemnify its insured." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490 (Tex. 2008). Therefore, the duty to defend and the duty to indemnify by an insurer

12

are distinct and separate duties. *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821–22 (Tex. 1997). While the language in the excess policy makes clear that Ohio Casualty is not required to provide a defense for the Patterson Companies, this language tells us nothing about whether the excess policy requires Ohio Casualty to reimburse Patterson for defense expenses it incurred as part of a covered claim.

### 3. Other language in the policy

The excess policy contains a section entitled "Exclusions" which provides in relevant part that the policy does not apply to:

> A. Any liability, including, but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, or consultants arising out of . . .asbestos, asbestos products, asbestos-containing materials or products, asbestos fibers or asbestos dust . . . .
>
> . . .
>
> B. Any liability, including, but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, or consultants arising out . . . the actual, alleged or threatened presence, discharge, dispersal, seepage, migration, release or seepage of 'pollutant,' however caused[.]"

In the Patterson Companies' view, this language supports the conclusion that the excess policy did not contemplate exclusion of all defense expenses. The Patterson Companies reason that if the policy unambiguously excluded defense expenses, there would be no need to specifically identify and exclude "expenses, costs of investigations, or the fees of attorneys, experts, or consultants" with respect to claims arising from asbestos or pollution claims.

Ohio Casualty argues in response that the Patterson Companies' argument attempts to give the term "loss" the same definition as the word "liability."

Arguing that the words are different and must therefore have different definitions, Ohio Casualty asserts this language has no bearing on the question of whether the term "loss" provides coverage for defense expenses. *See Waterford Harbor Master Ass'n v. Landolt*, No. 14-13-00817-CV, 2015 WL 293262, at \*8 (Tex. App.—Houston [14th Dist.] Jan. 22, 2015, pet. denied) (mem. op.) (different meanings intended by use of different words). However, while we agree with Ohio Casualty that the defined term "loss" has a different meaning than the word "liability", the excess policy defines its liability to the Patterson Companies under the policy in part through the definition of "loss." The terms are interrelated, and Ohio Casualty cannot dismiss the relationship between different provisions in its policy by saying the words are different. Having concluded above that the excess policy did not clearly and unambiguously exclude defense expenses, the description of the asbestos- and pollution-claims exclusion only further supports that conclusion.

Therefore, we hold (1) the trial court did not err in summarily adjudicating that defense expenses are covered under the excess policy; (2) the trial court did not err in granting the Patterson Companies' summary-judgment motion; (3) the trial court did not err in denying Ohio Casualty's summary-judgment motion; and (4) there is no reversible error supporting reversal and rendition of judgment that the Patterson Companies take nothing on its claims against Ohio Casualty. We overrule all four of Ohio Casualty's issues.

### III. CONCLUSION

We affirm the judgment of the trial court as challenged on appeal.


/s/    Charles A. Spain
Justice

Panel consists of Justices Spain, Poissant, and Wilson.