**Affirmed and Memorandum Opinion filed August 20, 2024.**



In The

# Fourteenth Court of Appeals

## NO. 14-23-00339-CV

**JOSHUA BOYLE, RYAN PRATT, AND N-MOTION GROUP, LLC D/B/A N-MOTION TRANSPORT, Appellants**

**V.**

**KELLY DECARTERET, DECARTERET TRANSPORT, LLC, TIMOTHY ROUCH, Appellees**

**On Appeal from the 234th District Court
Harris County, Texas
Trial Court Cause No. 2016-74701**

## MEMORANDUM OPINION

Appellants Joshua Boyle, Ryan Pratt, and N-Motion Group, LLC d/b/a N-Motion Transport[1] appeal a final judgment in favor of appellees Kelly DeCarteret, DeCarteret Transport, LLC[2], Timothy Rouch, and Shey Fiscus. In two

---

[1] It is not entirely clear from the record whether there are two separate legal N-Motion entities, but that issue is not before this court to decide.

[2] The final judgment references both a "DeCarteret Transport LLC" and "DeCarteret

issues on appeal, appellants argue that (1) the trial court's finding that no partnership existed was not supported by legally- and factually-sufficient evidence and (2) the trial court erred by failing to segregate the attorney's fees awarded to appellees. We affirm the judgment of the trial court as challenged on appeal.

## I.  BACKGROUND

N-Motion Group is a Texas limited liability company, with Pratt and Boyle as its sole members. In 2012, Kelly began working for N-Motion Group as an independent contractor. Kelly received a 40% commission on her sales; she did not receive a commission from any other sales made by Pratt or Boyle. At one point, Kelly, Pratt, and Boyle discussed forming a partnership, but they neither agreed to form one, nor did they formally sign any documents indicating that a partnership had been formed.

In 2016, shortly after Kelly parted ways with N-Motion Group and began her own business, Pratt and Boyle filed suit against appellees, including Kelly, alleging breach of statutory duties owed by a partner under the Business and Commerce Code and for theft of trade secrets under both the common law and the Texas Theft Liability Act. *See* Tex. Bus. Orgs. Code Ann. § 152.204(a) ("A partner owes to the partnership . . . (1) a duty of loyalty; and (2) a duty of care."); Tex. Civ. Prac. & Rem. Code Ann. § 134.003 ("(a) A person who commits theft is liable for the damages resulting from the theft.").

DeCarteret Transport, LLC filed a counterclaim, arguing that N-Motion Group breached its contractual obligation to pay certain sums. The case was tried

Transport, Inc.," even though it is unclear from the record whether those are two separate legal entities. Additionally, appellants have not sought a different or more favorable judgment against "DeCarteret Transport, Inc.," so it is not an appellee. *See Showbiz Multimedia, LLC v. Mountain States Mortg. Ctr., Inc.*, 303 S.W.3d 769, 771 n.3 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

without a jury, and the trial court rendered a take-nothing judgment on appellants' claims against appellees. The trial court further ordered that DeCarteret Transport LLC recover $26,890.88 on its counterclaim, and that DeCarteret Transport, Inc., Kelly DeCarteret, Rouch, and Fiscus recover $111,245.00 in attorney's fees.

The trial court filed numerous findings of fact and conclusions of law. We summarize several of the most pertinent findings: (1) Kelly received a 1099 form from N-Motion Group each year, reflecting the commissions she received as an independent contractor during the prior year; (2) N-Motion Group's tax returns showed only Boyle and Pratt as members, who each received K-1's as partners for tax purposes, but Kelly never receiver a K-1 for N-Motion Group; (3) Kelly did not share in the profits and losses of N-Motion Group; (4) Kelly did not have management or control over N-Motion Group; and (5) there was no written partnership agreement, noncompete agreement, or confidentiality agreement.

## II. ANALYSIS

### A. Standard of review and applicable law

When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 821–22 (Tex. 2005); *see also Graham Cent. Station, Inc. v. Peña*, 442 S.W.3d 261, 263 (Tex. 2014) (per curiam). The evidence is legally sufficient if it would enable a reasonable and fair-minded person to reach the verdict under review. *City of Keller*, 168 S.W.3d at 827. "If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then jurors must be allowed to do so." *Id.* at 822. "A reviewing court cannot substitute its judgment for that of the trier-of-fact, so long as the evidence falls within this zone of reasonable disagreement." *Id.*

"When a party attacks the factual sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). In a factual-sufficiency challenge, all the evidence in the record, both for and against the finding, is reviewed. *Id.*

An association of two or more people to carry on a business for profit as owners creates a partnership, regardless of whether (1) the persons intend to create a partnership or (2) the association is called a "partnership," "joint venture," or other name. *See* Tex. Bus. Orgs. Code Ann. § 152.051(b). In determining whether a partnership was formed, the following nonexclusive factors are considered:

(1)     receipt or right to receive a share of profits of the business;

(2)     expression of an intent to be partners in the business;

(3)     participation or right to participate in control of the business;

(4)     agreement to share or sharing:

    (A)     losses of the business; or

    (B)     liability for claims by third parties against the business; and

(5)     agreement to contribute or contributing money or property to the business.

Tex. Bus. Orgs. Code Ann. § 152.052(a); *see Energy Transfer Partners, L.P. v. Enter. Products Partners, L.P.*, 593 S.W.3d 732, 737–38 (Tex. 2020) (noting list of factors enumerated in § 152.052(a) are "nonexclusive" and "to be considered in a totality-of-the-circumstances test"). While it is possible for a party to "inadvertently create a partnership despite their expressed subjective intention not to do so[,]" the supreme court has held that the legislature did not "intend[] to spring surprise or accidental partnerships on parties." *Id.* at 738, 740 (quoting

4

*Ingram v. Deere*, 288 S.W.3d 886, 898 (Tex. 2009)).

**B.      Was there a partnership?**

In their first issue, appellants assert the evidence is legally-and factually-insufficient to support the trial court's finding that no partnership was formed. They claim that all the statutory elements of a partnership were satisfied, and that Kelly offered no evidence to the contrary except for the fact that she did not intend to be a partner. However, when the evidence is viewed in the light most favorable to the challenged finding, we conclude that it would enable a reasonable and fair-minded person to conclude that no partnership was formed. *See City of Keller*, 168 S.W.3d at 827. We begin by analyzing each of the statutory factors.

**1.      Profits**

Appellants assert that Kelly shared in the profits, but nothing in the record supports that contention. Instead, the testimony reflects that the parties had agreed to pay Kelly a 40% commission of the net revenues from each transaction closed by her, and the remaining 60% was retained by N-Motion Group, to cover overhead and other expenses, with the balance then distributed to Pratt and Boyle. Kelly did not receive any other form of compensation, nor did she receive any compensation for sales that she did not participate in. This factor weighs wholly in favor of the conclusion that no partnership was formed.

**2.      Intentions**

The record clearly reflects that Kelly began working for N-Motion Group as an independent contractor. While the parties explored the idea of forming a partnership, there is no evidence to support the assertion that the parties finalized those intentions or clearly intended to change Kelly's business relationship from independent contractor to partner.

This factor weighs wholly in favor of concluding no partnership was formed.

### 3. Control

Appellants argue that Kelly asserted control over the N-Motion entities' business decisions, pointing to the following evidence:

- An email from Kelly to Boyle and Pratt regarding Nina Atkins, another N-Motion Group salesperson; in that email, Kelly says "it reminds me that we need to put together an agreement for her."

- A follow-up e-mail regarding Atkins, containing terms to have her work as a 1099 contracted agent, saying "Here's the basics – Naturally, write it up as an agreement."

- An email from Pratt to Boyle and Kelly, regarding remodeling the offices. Kelly's response was a simple "You have my vote."

- An email from Kelly to Boyle and Pratt, forwarding an email from a prospective independent contractor, Judi Mullins, in which Mullins states her salary and work requirements. Kelly's only statement regarding Mullins' email was "Received this from Judi this morning. FYI."

- An email from Kelly to Pratt and Boyle, regarding payday if the pay period ends on a weekend, simply stating "Just a friendly reminder."

- An email exchange between Boyle and Kelly regarding a new employee's request to Boyle for a letter overstating the employee's pay. Boyle said he did not feel comfortable and asked for Kelly's thoughts on the request. Kelly replied with "I agree with YOU. No Bueno. Deny the request."

- An email from Kelly to a job applicant, regarding receipt of a resume and a brief phone interview. The email is copied to Boyle and Pratt; it stated, "We are interested in conducting a brief phone interview . . . . "

- The fact that Kelly "fired" Fiscus. Fiscus is Kelly's daughter; she was hired by N-Motion Group as an independent contractor. The given reason for Fiscus's termination was that Kelly fired her, but Kelly testified that after Fiscus witnessed Boyle being arrested at work, she no longer felt safe at work. Because Kelly did not want to put Fiscus in a position where she had to have another conversation with Boyle, she simply told Fiscus to leave and then told people at work that she had fired Fiscus.

Appellants argue that this evidence demonstrates that Kelly had the right to control the business and make executive decisions, such as hiring, firing, participating in decisions to remodel the office, and negotiate wages and working conditions. However, in none of these instances did Kelly assert any control over the business. The evidence certainly shows that Boyle and Pratt consulted Kelly regularly and asked her opinion, but there was no evidence Kelly made any of the executive decisions for the partnership.

Appellants allege that Kelly hired at least one individual but point to no evidence to indicate that Kelly hired anyone or that she had the authority to do so. At most, the evidence shows that she corresponded with a potential employee. Similarly, even though appellants alleged that Kelly fired at least one person, Kelly testified that she had simply told her daughter to stop coming to work because she did not feel safe; she did not truly "fire" her. Regarding remodeling the offices, Pratt did not ask for Kelly's agreement or consent; Kelly merely indicated that she approved of the decision.

7

In total, this factor weighs in favor of concluding no partnership was formed.

### 4.  Losses

There was no evidence that Kelly agreed to share in the losses. While an agreement to share losses is not necessary to create a partnership, this factor still weighs in favor of concluding that no partnership was formed. *See* Tex. Bus. Orgs. Code Ann. § 152.052(c) ("An agreement by the owners of a business to share losses is not necessary to create a partnership.").

### 5.  Contributions

There is no evidence that Kelly contributed any money or property to the business. This factor weighs in favor of concluding no partnership was formed.

### 6.  Additional factors

In addition to the statutory factors, we take note of the following factors, which also weigh in favor of finding no partnership was formed:

- Appellants assert that Kelly held herself out to others as a partner, pointing to her LinkedIn profile, which listed her as a "LTD partner" of N-Motion Group. However, Kelly testified that Pratt set up her LinkedIn profile and put the "LTD partner" on her account.

- N-Motion Group's tax returns showed only Boyle and Pratt as members, who each received K-1's as partners for tax purposes. Kelly never received a K-1.

- Kelly was not named as an owner or partner in any company-related documents.

- Kelly did not tell anyone she was a partner. Kelly specifically told one of her customers that she had presented a proposal to "the two

8

partners" in N-Motion Group.

- Kelly had no access to the bank account of the business venture and could not write checks.

Looking at the totality of the circumstances, we conclude that the trial court's finding that there was no partnership is supported by legally-sufficient evidence.

The evidence supporting the trial court's finding there was no partnership is not factually insufficient. At most, the evidence demonstrates that Boyle and Pratt consulted Kelly regularly and valued her input, but the evidence still does not demonstrate that Kelly had any control over the business. And the remainder of the factors and evidence still weigh greatly in favor of finding that Kelly was not a partner. Thus, we cannot conclude that the trial court's finding that there was no partnership is "against the great weight and preponderance of the evidence." *Dow Chem.*, 46 S.W.3d at 242.

We overrule appellants' first issue.

## C.    Segregation of attorney's fees

In their second issue, appellants argue that appellees were required to segregate the attorney's fees between recoverable and non-recoverable fees. However, to preserve a complaint for appellate review, a party must present a timely request, motion, or objection, state with specificity the grounds for the ruling requested, and obtain a ruling from the trial court. *See* Tex. R. App. P. 33.1(a). Appellants never raised this issue to the trial court and thus waived this issue. *See id.*; *see also Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 823 (Tex. 1985) ("Because [appellants] did not object to the failure of the trial court to segregate the attorney's fees between the claims, they have waived that point.").

We overrule appellants' second issue.

### III. CONCLUSION

We affirm the judgment of the trial court as challenged on appeal.


/s/      Charles A. Spain
         Justice

Panel consists of Justices Wise, Spain, and Hassan.